[No. E035193. Fourth Dist., Div. Two. Apr. 23, 2004.]

ARLENA M., Petitioner, v.
THE SUPERIOR COURT OF THE COUNTY OF SAN BERNARDINO,
Respondent;
SAN BERNARDINO COUNTY DEPARTMENT OF CHILDREN'S
SERVICES, Real Party in Interest.

**COUNSEL**

Maria G. Niciforos for Petitioner.

No appearance for Respondent.

Ronald D. Reitz, County Counsel, and Phebe W. Chu, Deputy County Counsel, for Real Party in Interest.

OPINION

**McKINSTER, Acting P. J.**—Petitioner Arlena M. (Mother) seeks review of an order setting a hearing under Welfare and Institutions Code section 366.26 with respect to her children Alicia F. and Destiny M.[1] We deny the petition.

Because Mother's argument is wholly procedural, no detailed recitation of the facts is necessary. The minors were taken into protective custody on May 14, 2003, when two-year-old Destiny was found unattended in the parking lot of the motel where the family was staying; Mother and Father were "passed out" in the motel room with the infant Alicia. The trial court found that the minors were dependent children (§ 300, subds. (b) and (g)) on June 10, 2003, with reunification services ordered for both parents.

Mother did not make progress on her plan, and at the six-month review hearing (§ 366.21) on January 21, 2004, the trial court terminated reunification services and directed that a permanency planning hearing be set.[2]

The sole contention raised in this petition is that the trial court committed fatal error when it failed to advise her at the jurisdictional/dispositional hearing that if she failed to participate regularly in any court-ordered treatment programs, the court could terminate reunification services after six months.

DISCUSSION

■ Section 361.5, subdivision (a)(3) provides that when a child is under three years of age at the time of removal, "the court shall inform the parent or guardian that the failure of the parent or guardian to participate regularly in any court-ordered treatment programs or to cooperate or avail himself or herself of services provided as part of the child welfare services case plan may result in a termination of efforts to reunify the family after six months." The question raised here is whether the failure of the trial court to comply with this requirement automatically requires the reinstitution of services to the parent who was not so advised.[3]

First, we note that although the minute order reflects that the parents *were* warned in the required terms, the reporter's transcript does not include such

---

[1] All subsequent statutory references are to the Welfare and Institutions Code.

[2] The minors are placed with their maternal great-grandparents, who wish to adopt them.

[3] Real party suggests that the doctrine of waiver should be applied, because Mother did not raise the issue at the time. It is true that a point may properly be deemed waived if not raised at a time when any error could have been corrected. (See generally 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 394, pp. 444–446.) However, we decline to apply the doctrine of waiver here, where the statute is clearly concerned that the advice should be given and presumes the party's ignorance of the information to be communicated.

an advisement. In such a case, the reporter's transcript generally prevails as the official record of proceedings (see *In re Josue G.* (2003) 106 Cal.App.4th 725, 731, fn. 4 [131 Cal.Rptr.2d 92]), and real party does not contend otherwise.

However, real party points out that the warning *was* contained in the "Waiver of Rights" signed by Mother and accepted by the court. (Mother also initialed the box containing the warning, and, in fact, the provision was circled.) At the hearing, Mother was asked by the court whether she had initialed and signed the form "to indicate that you'd read understood [*sic*] all the matters contained on the form?" She responded "Yes, sir," and also confirmed that she had had sufficient time to discuss the matter with her attorney.

The waiver of rights form which Mother signed also included a waiver of, inter alia, her rights to a hearing, to confront and cross-examine witnesses, to testify, and to employ the power of the court to compel the attendance of witnesses. It was therefore the dependency-court equivalent of the "*Tahl* waiver" form commonly used in the criminal courts.[4] In criminal law, it is well established that a defendant may make a valid waiver of constitutional rights by executing such a form even if the trial court itself does not go over them orally; rather, it is sufficient if the court verifies that the defendant has read and understood the form, and has signed it willingly. (*In re Ibarra* (1983) 34 Cal.3d 277, 285–286 [193 Cal.Rptr. 538, 666 P.2d 980].) The same has been held true of a written waiver of statutory rights. (*People v. Ramirez* (1999) 71 Cal.App.4th 519, 522 [83 Cal.Rptr.2d 882].)

In our case, section 361.5, subdivision (a)(3) does require the *court* to provide the specified information to the parent. However, the same was true in *People v. Ramirez, supra,* 71 Cal.App.4th 519, which dealt with the requirement of Penal Code section 1016.5 concerning advisement of noncitizen defendants concerning the potential immigration and deportation effects of a criminal conviction. As the court found in that case, the "legislative purpose" is fully served if the required advice is provided in a written document which the party may read and consider at his or her own pace.[5]

If a written communication of one's constitutional rights—verified and confirmed by the trial court—is sufficient to support a valid waiver of those rights and, as a result, a plea of guilty to criminal charges, we see no

---

[4] *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].

[5] Arguably such a method is *more* effective than expecting a party to take in and understand a litany of rights and consequences rattled off by a busy trial judge.

reason why a similar communication should not be effective in the dependency court. We therefore hold that the warning mandated by section 361.5, subdivision (a)(3) may be provided in writing, as long as the record indicates that the parent represented in court that the advice had been read and understood.[6]

■ We also agree with respondent that, if there were error here, it was harmless, and properly reviewed under that standard. Unlike Penal Code section 1016.5, subdivision (b), for example, which specifically provides that a defendant who does not receive the required advice may, upon request, withdraw his plea of guilty, section 361.5, subdivision (a)(3) contains no express consequence for a failure to follow its directions. It is true that, in cases not involving a statutory time limit, the fact that a statute does not specify a consequence for the failure to meet a requirement does not necessarily mean that there is none. (See *People v. Tindall* (2000) 24 Cal.4th 767, 775 [102 Cal.Rptr.2d 533, 14 P.3d 207].) It is also true that, given the constitutional dimensions of many dependency court proceedings, there is some tendency to find procedural errors reversible per se. Thus, in *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535, 547–551 [126 Cal.Rptr.2d 14] (*Judith P.*), the court found that the failure to give a parent a copy of the social worker's review report at least the statutory 10 days before the review hearing (see § 366.21, subd. (c)) *was* reversible per se. However, the distinctions between the breach in that case, and the lapse here, are instructive.

In *Judith P.*, the court found that the requirement for advance notice of the contents of the social worker's report was an essential element of due process in the entire context of dependency proceedings. Furthermore, by giving the parent a fair opportunity to rebut or contest negative information, the requirement " 'reduce[s] the risk of erroneous fact-finding . . .' and to thereby 'preserve the parent-child relationship' whenever possible . . . ." (*Judith P., supra,* 102 Cal.App.4th at p. 550.)

■ The advice requirement of section 361.5, subdivision (a)(3), by contrast, has nothing to do with due process. We concede that its purpose is apparently to instill in a parent a sense of urgency and of the seriousness of the matter. To that extent it certainly promotes the goal of family preservation or reunification. However, realistically, the requirement can only operate on a parent who would otherwise ignore or neglect the reunification plan and its requirements. The efficacy of the warning assumes that such a parent, who

---

[6] Again by analogy to the criminal context, such a representation may not be lightly recanted. (See *People v. Fratianno* (1970) 6 Cal.App.3d 211, 220 [85 Cal.Rptr. 755].) In this case, petitioner does not assert that she did not, in fact, read or sign the waiver form.

otherwise would ignore his or her child and responsibilities, may be stimulated by the reference to a six-month limit and therefore work diligently towards reunification from the beginning.

While the warning may have this salutary effect in a few cases, the negative effect of making its omission automatically reversible could be widespread and substantial. Dependency courts are already awash in requirements for what must be put on the record; indeed, the Legislature has established a rigorous framework of required findings, following upon required considerations which probably exceeds, in its minutiae and micromanagement, the infamously detailed criminal sentencing rules. It is far from unusual that something slips by and is omitted. (E.g., *In re Kristin W.* (1990) 222 Cal.App.3d 234, 253 [271 Cal.Rptr. 629].) If such omissions are routinely given the effect of invalidating rulings—especially rulings related to permanency planning—the result would be an undesirable protraction of proceedings.

Militating against this approach is the fact that, in addition to family preservation and reunification where possible, the primary goal of the dependency statutes is to obtain stability and permanency for children who will *not* return to their natural parents. The clear legislative intent is that " 'minors who are adoptable will no longer have to wait months and often years for the opportunity to be placed with an appropriate family on a permanent basis.' " (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 247 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) It is also often stressed that "[t]he reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038 [234 Cal.Rptr. 739].)

One might paraphrase the maxim and say that "A family delayed is a family denied." Hence, in our view, courts should be (and are) cautious in determining which errors and omissions require that proceedings be returned to the trial court for further attempts at a reunification which the record suggests will never occur.[7]

---

[7] When the omission is a finding, the courts have frequently relied on the theory of *implied* findings to avoid the consequence of reinstituting "reunification" many months or even years after an apparently "permanent" order. (E.g., *In re Andrea G.* (1990) 221 Cal.App.3d 547, 554–555 [270 Cal.Rptr. 534].) Obviously one cannot "imply" that something was said which in fact was not said, so such an approach would not be available here.

■ As we have noted, any "error" here was not of constitutional dimensions. We therefore conclude that even if the advice required by section 361.5, subdivision (a)(3) could not properly be conveyed indirectly as it was in this case, the "error" would not require reversal unless the parent could show prejudice. None appears here. The record indicates that Mother was aware of the six-month limitation, and there is no evidence that *if* Mother had been *directly* advised of the possible consequences of her inaction, she would have promptly and consistently participated in her plan.[8]

The petition for writ of mandate is denied.

Hollenhorst, J., and Gaut J., concurred.

---

[8] One of Mother's deficiencies during the reunification period was her failure to visit the minors on anything approaching a regular basis. A concerned but lackadaisical parent might conceivably need a stern warning to push him or her into therapy, drug rehabilitation, or parenting classes, but it is difficult to imagine that any encouragement or threat could overcome essential indifference.