Filed 12/15/14  In re Elena O. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ELENA O., a Person Coming Under the Juvenile Court Law. | B255987 (Los Angeles County Super. Ct. No. CK90653) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>PATRICIA W.,<br><br>        Defendant and Appellant. | |

      APPEAL from order of the Superior Court of Los Angeles County, Debra L. Losnick, Juvenile Court Referee.  Affirmed.

      Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

      Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Melinda A. Green, Deputy County Counsel, for Plaintiff and Respondent.

**INTRODUCTION**

Appellant Patricia W. (Mother) appeals from the juvenile court's order terminating her parental rights to her infant daughter, Elena O. Mother contends the juvenile court abused its discretion in denying her petition for modification brought under Welfare and Institutions Code section 388,[1] through which she sought reinstatement of reunification services with Elena. Mother also contends the court failed to advise at the jurisdiction hearing that her reunification services with Elena could be terminated after six months if she did not participate in court-ordered programs or a child welfare services plan, as required under section 361.5, subdivision (a)(3).

We hold the juvenile court did not abuse its discretion in denying Mother's section 388 petition: Mother failed to demonstrate that changed circumstances or Elena's best interests justified a modification of the juvenile court's order terminating Mother's reunification services. We also hold that Mother's contention that the juvenile court failed to provide proper notice under section 361.5, subdivision (a)(3) is not supported by the record.

**FACTUAL AND PROCEDURAL BACKGROUND**

Prior to DCFS's initiation of Elena's dependency case, Mother was involved in several dependency and juvenile proceedings, including a dependency proceeding involving her older daughter, S.M., as well as her own dependency and juvenile proceedings beginning in the early 1990s.

Mother, who was born in 1991, began using drugs, primarily marijuana and methamphetamine, when she was 19. She used methamphetamine during a period of her pregnancy with S.M., but stopped once she discovered she was pregnant. During the periods when she uses drugs, Mother usually smokes marijuana every other day and uses methamphetamine about every three days.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Before Elena was born, DCFS filed a dependency petition on S.M.'s behalf, citing Mother's history of drug abuse and an incident during which Mother transported S.M. in a car without securing her in a child's safety restraint seat as justifications for S.M.'s removal from Mother's custody. In May 2012, the juvenile court declared S.M. a dependent of the court and placed her with maternal relatives. During S.M.'s placement, Mother sporadically visited and never bonded with her daughter. In October 2013, the court terminated Mother's parental rights as to S.M. due to Mother's failure to comply with the juvenile court's orders.

While S.M.'s dependency case was pending, Mother became pregnant with Rafael O.'s (Father) daughter, Elena. In December 2012, Mother gave birth to Elena. Three days later, DCFS removed Elena from Mother's and Father's custody and placed her with a foster family.

On December 19, 2012, DCFS filed an original dependency petition on Elena's behalf. The original petition alleged Mother was unable to adequately protect and care for Elena based on Mother's history of drug abuse and failure to adequately protect S.M.'s safety, thereby placing Elena at a risk of harm. On January 11, 2013, Elena's original petition was dismissed after DCFS filed an amended petition adding an allegation that Elena's removal from her parents' custody was necessary due to Father's history of drug abuse.

At the January 25, 2013 jurisdiction hearing, the juvenile court sustained DCFS's amended petition as to the drug-abuse allegations against Mother and Father, and it struck the allegation that Mother placed Elena at risk of harm by previously failing to protect S.M.'s safety. The court then declared Elena a dependent of the court and ordered DCFS to provide reunification services to both parents. In its jurisdiction/disposition report, DCFS recommended that the court advise Mother and Father that their reunification services might not exceed six months unless there was a substantial probability Elena would be returned to Mother's or Father's physical custody within 18 months of Elena's initial removal from Mother's and Father's custody.

Following the jurisdiction hearing, DCFS referred Mother to, among other things, drug testing, parenting classes, and a substance abuse treatment program. DCFS also provided Mother with bus passes.

After Elena was declared a dependent, Mother became homeless, and her visits with Elena were sporadic and infrequent. By March 2013, Elena had yet to bond with Mother. At the same time, Elena appeared to be bonding with her foster family.

Approximately six months after her birth, Elena was exhibiting signs of muscle rigidity in her arms and legs, which DCFS suspected was caused by prenatal exposure to drugs and physical assault endured by Mother during pregnancy. Elena appeared to be otherwise well-developed and healthy.

By late June 2013, Mother was still homeless and reportedly living with Father in a park in the San Fernando Valley. At that time, Mother had yet to enroll in, or show proof of completion of, any court-ordered programs or services, and she had yet to submit to drug testing. Mother's and Father's visits with Elena remained sporadic and infrequent, with Mother's last visit occurring on April 18, 2013. As a result, Elena had yet to begin bonding with Mother and Father. Additionally, during their visits, Mother would usually defer to Father to care for Elena's needs.

At the same time, Elena's bond with her foster family continued to grow stronger. According to DCFS's interim report, Elena's foster family had devoted an "inordinate, but necessary, amount of energy, time, sacrifice and love [to] the care of Elena," with Elena's foster mother carrying her for up to 18 hours a day in a specialized sling designed to provide skin-to-skin contact and correct Elena's muscle rigidity.

In its July 1, 2013 status-review report, DCFS recommended that the juvenile court terminate Mother's and Father's reunification services, citing the parents' failure to regularly visit Elena and participate in their court-ordered treatment plan. The juvenile court continued the scheduled July 1, 2013 six-month review hearing to August 7, 2013 to allow for a contested hearing.

4

On July 31, 2013, the juvenile court ordered DCFS to evaluate Elena's paternal grandmother for potential placement. DCFS's evaluation concluded that Elena's paternal grandmother would not be a suitable caregiver for Elena. The evaluation stated that Elena's grandmother had allowed Mother and Father to use drugs while they lived with her in the past, and that she had allowed Mother and Father unfettered access to her home while she was seeking custody of Elena following Elena's placement with the foster family.

At the August 7, 2013 six-month review hearing, the juvenile court terminated Mother's and Father's reunification services and set a permanency planning hearing pursuant to section 366.26. Following the review hearing, Mother did not seek appellate review of the juvenile court's order terminating her reunification services.

By August 2013, Mother was pregnant with her third child. In late August 2013, Father reportedly attacked pregnant Mother on at least two occasions. During the first reported incident, Father kicked Mother's stomach and repeatedly struck her face. Several days later, Father and his new girlfriend attacked Mother. During this incident, Father hit Mother's face while his girlfriend used a large stick to strike Mother's head and upper body.

On September 4, 2013, Father was arrested on domestic violence charges. Following his arrest, Mother informed DCFS that Father used methamphetamine on a daily basis when he was out of custody. During interviews with DCFS, Father confirmed that he used to associate with a gang located in the San Fernando Valley. Father also confirmed he had previously been incarcerated for several years for a murder charge of which he was never convicted, as well as for several burglary and grand theft auto convictions. According to his parole officer, Father "should not be supervising any child."

As of October 7, 2013, Mother and Father had visited Elena only four to five times since Elena's birth, with their last visit having taken place at a July 2013 court hearing. By this time, Elena's foster family had informed DCFS that it wanted to adopt Elena if the juvenile court were to terminate Mother's and Father's parental rights. Elena's foster

family had also informed DCFS that it was communicating with S.M.'s caregivers about facilitating visits between Elena and S.M.

On November 4, 2013, Mother entered an inpatient substance abuse treatment program. In January 2014, Mother gave birth to her third child, Damien O., who she also became pregnant with by Father. A few days later, DCFS filed a dependency petition on Damien's behalf. The juvenile court later declared Damien a dependent of the court and released him to Mother's custody on the condition that Mother remain in her treatment program. During DCFS's investigation of Damien's case, Mother admitted that she had resumed using methamphetamine after she gave birth to Elena, and that her use had overlapped with her pregnancy with Damien. She also informed DCFS that she had previously failed to complete a substance abuse treatment program prior to Elena's birth.

On January 28, 2014, Mother filed a section 388 petition seeking modification of the juvenile court's order terminating her reunification services with Elena. In her petition, Mother claimed that her circumstances had changed because she had entered an inpatient treatment program on November 4, 2013, and she had since consistently tested negative for drug use. She also claimed that reinstating reunification services would be in Elena's best interest because it would enable Elena to permanently bond with Mother. A letter from Mother's treatment center attached to the petition stated that Mother had yet to seek gainful employment or transition to a lower level of treatment. At the time she filed her petition, Mother had not visited Elena since July 2013. On January 30, 2014, the juvenile court denied Mother's section 388 petition without a hearing.

Around March 2014, Mother began visiting Elena again. However, Mother's visits remained infrequent due to her residency in the treatment program. During these visits, Elena continued to show no signs of recognizing Mother as a parental figure.

On March 21, 2014, Mother filed a second section 388 petition seeking modification of the juvenile court's termination order. In her second petition, Mother claimed her circumstances had sufficiently changed because she had remained enrolled in her inpatient treatment program for more than five months and had continued to test negative for drug use. Mother claimed modification of the court's termination order

6

would be in Elena's best interest because it would provide Elena the opportunity to grow up with Damien. An attached letter from Mother's treatment center explained that Mother was participating in a series of group sessions, including parenting classes and relapse prevention; however, the letter also confirmed that Mother still had not obtained employment or transitioned to a lower level of treatment. The juvenile court granted Mother a hearing on her second petition.

In its response to Mother's second petition, DCFS observed that Elena did not appear to recognize Mother as a parental figure and refused to independently interact with her. By the time Mother filed the second petition, Elena had become very closely bonded with her foster mother, often crying whenever her foster mother left her alone with Mother and turning only to her foster mother for help with basic activities such as putting on her shoes or grabbing her toys. DCFS also observed that Elena was experiencing developmental delays that Mother refused to acknowledge. As a result, DCFS was concerned that Mother would not be willing to secure necessary treatment for Elena should the child be returned to Mother's custody.

In that same report, DCFS also reported that Mother acknowledged Father's violent and abusive behavior. Mother also informed DCFS that Father's use of methamphetamine tended to intensify his violent behavior. Nevertheless, Mother expressed a desire to reunite with Father upon his release from custody if he addressed his substance abuse and anger issues. At the time of the hearing on Mother's second petition, Father was still in custody, but he was expected to be released around October 2014.

On April 30, 2014, the juvenile court conducted a hearing on Mother's second petition. Mother did not testify; she submitted on her petition and her counsel's arguments. The court denied Mother's petition, finding that Mother had demonstrated only that her conditions were "changing," and that modifying the court's termination order would not be in Elena's best interests. The court then conducted a permanency planning hearing, during which it terminated Mother's and Father's parental rights as to Elena.

At a July 31, 2014 review hearing, the juvenile court ordered a permanent plan of adoption for Elena, with a target finalization date of January 29, 2015.[2]

## DISCUSSION

### I. Mother Has Not Demonstrated the Juvenile Court Failed to Provide Proper Notice Under Section 361.5, Subdivision (a)(3)

Mother asserts the juvenile court failed to advise her at the January 25, 2013 jurisdiction hearing that her reunification services with Elena could be terminated after six months, as required under section 361.5, subdivision (a)(3). Mother argues the juvenile court's failure to so advise requires reversal of the court's order terminating her parental rights.

Under section 361.5, subdivision (a)(3), if a child is under three years of age at the time she is first removed from the physical custody of her parent, "the court shall inform the parent or guardian that the failure of the parent or guardian to participate regularly in any court-ordered treatment programs or to cooperate or avail himself or herself of services provided as part of the child welfare services case plan may result in a termination of efforts to reunify the family after six months." (§ 361.5, subd. (a)(3).)

"The advice requirement of section 361.5, subdivision (a)(3) . . . has nothing to do with due process." (*Arlena M. v. Superior Court* (2004) 121 Cal.App.4th 566, 571.) Rather, its goal is to "instill in a parent a sense of urgency and of the seriousness of the [dependency] matter . . . ," and it most effectively operates "on a parent who would otherwise ignore or neglect the reunification plan and its requirements." (*Ibid.*) This goal must be appropriately weighed against the primary purpose of the dependency statutes, which is to "obtain stability and permanency for children who will *not* return to their natural parents." (*Id.* at p. 572, italics in original.) If reviewing courts were to regularly invalidate a juvenile court's order terminating reunification services on the

---

[2]     On our own motion, we take judicial notice of the juvenile court's minute order from a July 31, 2014 review hearing, which was entered after Mother filed her instant appeal.

8

grounds that the juvenile court failed to advise under section 361.5, subdivision (a)(3), "the result would be an undesirable protraction of proceedings." (*Ibid.*) Thus, "courts should be . . . cautious in determining which errors and omissions require that proceedings be returned to the trial court for further attempts at a reunification which the record suggests will never occur." (*Ibid.*) In light of these considerations, a juvenile court's failure to comply with section 361.5, subdivision (a)(3)'s advisement requirements does not require reversal per se; rather, such error should only be reversed where the parent demonstrates prejudice. (*Arlena M.*, *supra*, 121 Cal.App.4th at pp. 571-573.)

As a preliminary matter, we are unable to determine whether the juvenile court failed to properly advise Mother of her rights under section 361.5, subdivision (a)(3). Mother has not supplied the reporter's transcript from the January 25, 2013 jurisdiction hearing. It is well settled that the appellant has the affirmative duty to demonstrate error on appeal by reference to an adequate record. (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435.) "[A] record is inadequate . . . if the appellant predicates error only on the part of the record [she] provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed." (*Ibid.*)

Here, Mother has failed to provide a critical portion of the jurisdiction hearing -- i.e., the reporter's transcript. As the transcript would provide an account of what rights the juvenile court actually advised Mother, we are unable to determine whether the juvenile court in fact erred. (See *Osgood*, *supra*, 127 Cal.App.4th at p. 435.) In light of the dependency statutes' primary purpose of obtaining stability and permanency for the placement and development of a child subject to the dependency system, we are not inclined to find error, and thereby disrupt Elena's placement in a permanent, stable, and nurturing environment, where Mother has not met her burden of proof. (See *Arlena M.*, *supra*, 121 Cal.App.4th at p. 572 ["The clear legislative intent is that 'minors who are adoptable will no longer have to wait months and often years for the opportunity to be placed with an appropriate family on a permanent basis.' [Citation]"]; see also *Osgood*,

9

*supra*, 127 Cal.App.4th at p. 435 [" 'A judgment or order of the [trial] court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent. . . .' "; italics in original].)

In any event, even if we were to assume the juvenile court failed to properly advise Mother of her rights under section 361.5, subdivision (a)(3), Mother has not shown that she was prejudiced by such error.  (See *Arlena M.*, *supra*, 121 Cal.App.4th at p. 573 [failure to advise pursuant to section 361.5, subdivision (a)(3) does not warrant reversal unless the parent can establish prejudice].)  Mother waited three months after the court terminated her reunification services before she began taking any considerable steps to beneficially change her living circumstances.  For example, after her reunification services were terminated, Mother did not enter a substance abuse treatment program or begin submitting to regular drug tests until November 4, 2013.  Still, by that time, Mother had yet to start regularly visiting Elena.  In fact, Mother went approximately seven months from the time her services were terminated without visiting her daughter.  Further, Mother waited more than eight months after the juvenile court terminated her services to seek appellate review of the termination order.  Mother's conduct before and after the juvenile court terminated her reunification services provides no indication that Mother would have taken the necessary steps to retain physical custody of Elena had she been advised in accordance with section 361.5, subdivision (a)(3).  (See *id*. at p. 573, fn. 8 ["One of Mother's deficiencies during the reunification period was her failure to visit the minors on anything approaching a regular basis.  A concerned but lackadaisical parent might conceivably need a stern warning to push him or her into therapy, drug rehabilitation, or parenting classes, but it is difficult to imagine that any encouragement or threat could overcome essential indifference."].)  In other words, Mother has failed to establish prejudice.

## II.    The Juvenile Court Did Not Abuse its Discretion in Denying Mother's Section 388 Petition

Mother next contends the juvenile court abused its discretion in denying her second section 388 petition.  Mother argues her participation in an inpatient substance

abuse treatment program constitutes changed circumstances to warrant modification of the juvenile court's order terminating her reunification services with Elena. Mother further argues reinstatement of her reunification services would be in Elena's best interests because it would allow Elena the opportunity to be raised by her biological mother and grow up with her biological brother.

To warrant modifying a juvenile court's order under section 388, "there must be a substantial change in circumstances regarding the child's welfare and the requested modification of the prior order must be in the child's best interests." (*In re Heraclio A.* (1996) 42 Cal.App.4th 569, 577.) "Not every change in circumstance can justify modification of a prior order. The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate." (*In re S.R.* (2009) 173 Cal.App.4th 864, 870.) In determining whether the proposed change would be in a child's best interests, courts look to three factors: (1) the seriousness of the problem leading to the child's dependency and the reason for its continuation; (2) the relative strength of the bonds between the child and both her biological parent and her caretaker, as well as the relative lengths of time the child has spent with her biological parent and her caretaker; and (3) the nature of the change of circumstance, the ease by which the change could be brought about, and the reason the change was not made earlier. (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685, citing *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530-531.)

The party requesting modification of a juvenile court's order bears the burden of establishing by a preponderance of the evidence that the modification is justified. (*In re S.R.*, *supra*, 173 Cal.App.4th at p. 870.) "'Whether a previously made order should be modified rests within the dependency court's discretion, and its determination will not be disturbed on appeal unless an abuse of discretion is clearly established.' [Citation.] The denial of a section 388 motion rarely merits reversal as an abuse of discretion." (*In re Amber M., supra,* 103 Cal.App.4th at pp. 685-686.)

11

At the time she filed her second petition, Mother alleged the following changed circumstances: (1) she had been participating in an inpatient substance abuse treatment program for more than five months; (2) she had begun visiting with Elena again; and (3) she had been allowed to retain custody of Damien while she remained in her treatment program.

The juvenile court did not abuse its discretion in denying Mother's second section 388 petition. Mother has demonstrated only that her circumstances are changing; she has not established that her circumstances have sufficiently changed to warrant modifying the juvenile court's order terminating her reunification services. (See *In re Heraclio A.*, *supra*, 42 Cal.App.4th at p. 577.)

Mother has a history of drug abuse and relapses, including a relapse following Elena's birth. Her drug use has overlapped with the pregnancies of two of her children, and her drug use and relapses led to the termination of her parental rights as to Elena's older sister. While Mother has started to address these issues through an inpatient treatment program, the issues have yet to be adequately resolved. (See *In re Kimberly F., supra,* 56 Cal.App.4th at p. 531, fn. 9; *In re Clifton B.* (2000) 81 Cal.App.4th 415, 423-424.) For example, the letter from Mother's treatment program's clinical supervisor states that, at the time Mother filed her second petition, she had yet to transition to a lower level of care. Further, Mother has a history of unsuccessfully entering substance abuse treatment programs. Thus, Mother's limited participation in her current program does not establish that she has adequately resolved her substance abuse problems to constitute a substantial change in circumstances under section 388. (See *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081.)

Additionally, there is substantial evidence to support the juvenile court's finding that reinstatement of Mother's reunification services would not be in Elena's best interests. Since three days after she was born, Elena has lived with, and has been cared for by, her foster family. From the moment her foster family took her into its home, Elena has received exceptional care, attention, and affection; three things Mother has never seriously attempted to provide Elena since her birth. Although Mother has been

12

homeless or living in a treatment center since Elena's birth, DCFS has worked to facilitate Mother's visits with Elena by supplying her with bus passes; however, for more than a year of Elena's life, Mother rarely made an effort to visit her child. For example, between the time Elena was removed from Mother's custody on December 14, 2012 and the time Mother filed her first section 388 petition in late January 2014, Mother visited Elena only a handful of times.

Unsurprisingly, Elena has yet to form a bond with Mother or start to recognize her as a parental figure. On the other hand, Elena has formed a substantial bond with her foster family, especially her foster mother. Elena always turns to her foster mother for help with her basic needs, and she does not like to be separated from her foster mother for more than a few minutes at a time, even when she is in Mother's presence. Although Mother has finally started taking steps toward establishing a steady and drug-free life, she has offered no explanation for why it took nearly a year of Elena's life, and nearly three months after the juvenile court terminated her reunification services, for her to begin taking those steps. To allow Mother to reinitiate reunification services and delay Elena's permanent placement with the only family Elena knows during a time that is crucial to Elena's emotional and physical development would contravene the purpose of the dependency system. (See *Arlena M.*, *supra*, 121 Cal.App.4th at p. 572 ["[T]he reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it"]; see also *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 ["Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability"].)

Additionally, Mother's willingness to reunite with Father demonstrates that reinstatement of Mother's reunification services would not be in Elena's best interests. Father has a history of being violent and abusive toward Mother, and this history reveals his alarming lack of concern for his children's safety. On two reported occasions after Elena's birth, Father attacked Mother while she was pregnant with Damien. During the first attack, Father kicked Mother's stomach; during the second attack, he hit Mother's

13

face while he allowed his girlfriend to strike Mother's stomach with a stick. Father also frequently uses methamphetamine, which Mother claims exacerbates his abusive behavior.

Since Elena's birth, Father has made no attempt to address his issues with violence and substance abuse, and neither he nor Mother have demonstrated that he will address these issues at any point in the near future. Thus, Mother's willingness to reunite with Father demonstrates that it would not be in Elena's best interests to reinstate Mother's reunification services; doing so would place Elena at risk of being removed from a stable and nurturing household only to be relocated to an environment that would likely be wrought with violence and substance abuse if Father were to return to the fold. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 808 [the mother's petition and supporting evidence did not show that it was in the minor's "best interests to be removed from the only home and caretakers he had ever known, and thereby be deprived of the stability of a permanent home, in order to be returned to a parent who remained a risk . . . to again regress by returning to an abusive partner"]; see also *In re Anthony W.* (2001) 87 Cal.App.4th 246, 252 [a child should not be made to wait indefinitely for mother to address her "long history of drug addiction and [ ] recurring pattern of domestic violence in front of the children"].)

### DISPOSITION

The juvenile court's order is affirmed.


**WOODS, J.**

**We concur:**



**PERLUSS, P. J.**                                     **SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.