Filed 12/7/20  In re J.O. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re J.O., a Person Coming Under the Juvenile Court Law. | |
| NAPA COUNTY HEALTH & HUMAN SERVICES AGENCY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>J.H.,<br><br>　　　Defendant and Appellant. | A159723<br><br>　(Napa County<br>　Super. Ct. No. 18JD000048) |

J.H. (Mother) is the sole living parent for two minor children, J.O. (minor) and Je.O., and two adult children, D.O. and I.O.  Mother appeals a juvenile court order terminating her parental rights to minor.  She contends the juvenile court's appointment of a guardian ad litem for Mother violated her rights to due process and was unsupported by substantial evidence.  Mother further contends, as a result of the appointment, she was unable to complete her reunification plan, which resulted in the termination of her parental rights.  While we conclude the appointment of the guardian ad litem violated Mother's right to due process, we conclude the error was harmless and affirm the order.

# I. BACKGROUND

The Napa County Health & Human Services Agency (Agency) filed a petition under Welfare and Institutions Code[1] section 300, subdivisions (a) and (b)(1), alleging Mother subjected minor and his minor sibling, Je.O., to physical and emotional abuse, has been residing with the children in violation of an active restraining order, and has significant health issues that impair her ability to parent minor and Je.O.

The allegations arose from a referral provided to the Agency by a mandated reporter. The referral stated minor's father, who had sole physical and legal custody of the children, was hospitalized with a poor prognosis, and Mother was residing with minor despite an active restraining order. The father died four days after the referral was made.

Minor's siblings reported Mother had been physically and emotionally abusive toward them and the father for "a very long time." Je.O. reported that Mother would call minor "fag" and "dumbass" and relied on minor to clean up after her. Minor also reported Mother called him "whore," "fag," and "dumb," threatened violence, threw objects at him, scratched him, and required him to take care of her. Minor stated his older siblings were primarily in charge of taking care of him.

The Agency further noted Mother had been violating the restraining order for almost a year by residing with the children and the father. Mother asserted she did not know the restraining order was active, believed it had been rescinded, and disputed its validity.[2] The Agency found the allegations substantiated and requested the court detain the children.

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] The jurisdiction/disposition report notes there were three requests for the restraining order to be terminated. The first was opposed by the father and two of the siblings, Je.O. and D.O., and the request was denied. Of the

2

The court subsequently held a detention hearing. Mother did not contest detention and the court ordered minor and Je.O. be detained. The court also ordered visitation for a minimum of two hours per week.

Prior to the jurisdiction hearing, the social worker filed a request to change the court's prior visitation order. The social worker reported Mother "has been inappropriate regarding topics related to money, expectations of the children and the father's passing." During the last visit, Mother initially refused to visit with Je.O., stated she believed Je.O. was trying to brainwash minor and, after 10 minutes, the children left the room and refused to visit any further. Mother was escorted out of the building, and the social worker consoled the children because they were crying and unable to calm down. The minor and Je.O. informed the social worker they did not want to attend the next visit and requested a break from visitation.

When the Agency spoke with Mother about the last visit, Mother indicated she did not believe she made any inappropriate comments to the children. Mother instead focused on her assertion that the children are being manipulated and not being truthful. Mother informed the social worker she needed a break from visitation and was planning to ask for such a break, but then stated she needed to see her children. The social worker informed the court ongoing visitation would be detrimental to the best interests of the children, and requested the court order no visitation at this time.

At the hearing on the change order request, the guardian ad litem and the Agency reached an agreement to modify visitation "so that the social worker will monitor the situation, and when it's in the best interests of the

---

other two requests, at least one was made by the father. However, the court denied both requests because the parties did not appear at the scheduled hearings.

3

children to have a visit a visit can occur." It was further agreed either the children or Mother could request a visit, and the social worker could then allow visitation if it was in the children's best interests. The guardian ad litem explained the agreement "avoid[ed] a full cutoff and a detriment finding."

The Agency filed a jurisdiction/disposition report prior to the jurisdiction hearing. Mother continued to deny any abuse of minor or Je.O. She restated her belief the children are being manipulated and encouraged to report false allegations against her, and she denied any physical or emotional abuse. Mother repeatedly informed the social worker she was not willing to admit to any abuse and would not take responsibility because she "did not do anything wrong."

The status report also noted Mother had yet to meaningfully attend support groups with Napa Emergency Women's Services (NEWS) and Cope Family Center (Cope). At the time of the report, Mother had only attended two group meetings with NEWS and one group session and one individual session with Cope. Cope informed the Agency Mother "does not benefit from the large group setting as she does not believe that she did anything wrong and continues to state the children are lying about the abuse." The report also recounted information from a mental health counselor who met with Mother. Mother informed the counselor that the father convinced minor and Je.O. to make up allegations of child abuse and asserted the father was verbally and psychologically abusive.

The report also indicated Mother violated the restraining order on two separate occasions since the detention hearing, first by entering the home without permission and, second, by calling D.O. in violation of the restraining order.

4

At the jurisdiction hearing, Mother submitted on the Agency's recommendation. Mother informed the court she had an opportunity to read the waivers of rights and talk about her rights with her attorney and guardian ad litem, and she did not have any questions about the documents. The court adopted the Agency's recommendation and scheduled a six-month review. The recommendation required, in part, Mother to develop a treatment plan to manage her mental health, complete a psychotropic medication evaluation, complete an anger management class, participate in mental health therapy, and participate in parenting classes.

Mother continued to deny the allegations of abuse at the six-month hearing. She asserted D.O. was " 'brainwashing' " the children to gain control of the father's assets, claimed she is a good mother, and did not believe she needed therapy. She expressed a desire to attend anger management classes merely to show her children she was " 'not crazy.' " However, the Agency noted in its six-month report Mother had neither attended anger management classes despite a referral given by the Agency, participated in mental health therapy as required by her case plan, nor completed a teenager parenting class. While Mother completed a " 'Triple P' Positive Parenting Program," Mother indicated the class was " 'useless' " because it merely instructed her to not use physical punishment and she asserted she has never used physical punishment on her children. The report also summarized ongoing harassment and verbal abuse by Mother toward D.O., who has custody of minor and Je.O. Mother contacted D.O. multiple times per day and, when denied access to minor, Mother became verbally abusive by stating D.O. was " 'evil,' and 'stealing her children,' and 'just after the house.' "

The six-month report further stated no visitation was occurring between Mother, minor, and Je.O. The social worker explained "the children

5

continue to refuse any and all visits, phone calls, letters, or contact of any kind with [Mother], as they continue to state that contact with [Mother] is emotionally and psychologically harmful to them." Minor and Je.O. noted they love Mother but are not ready to resume any kind of relationship with her. They report being happy, safe, and loved with D.O. The Agency noted Mother would like to resume visitation "but is willing to respect that the children do not presently want visits with her."

The Agency concluded it would be detrimental and unsafe for minor and Je.O. to return to Mother's care due to her ongoing denial of the abuse allegations. Neither minor nor Je.O. wished to return to Mother's care. The court adopted the Agency's recommendation, and scheduled the matter for a 12-month review.

In advance of the 12-month review, the Agency filed a status review report recommending the family reunification plan be terminated and a section 366.26 hearing be held for minor. Mother remained in noncompliance with her case plan. She failed to meet with her social worker monthly, despite numerous calls and reminders from the Agency of her need to do so. The report explained Mother had not addressed her anger management issues, provided any documentation regarding her medical or psychological treatment, completed an initial anger management class or the recommended teenager parenting class, or participated in individual mental health therapy. At the time of the report, Mother continued to deny the allegations of abuse and neglect. Mother continued to inform the Agency " 'nothing happened' " and claimed D.O. is " 'brainwashing' " minor and Je.O. to lie about abuse in order to gain financially.

The report further stated minor and Je.O. have continued to refuse any and all visits, phone calls, letters, or contact of any kind with Mother and

6

state any contact with Mother causes them distress due to her repeated denials of abuse.

The Agency asserted returning minor and Je.O. to Mother's care would be detrimental because Mother has continued to deny any physical or emotional abuse, does not understand the impact of that abuse on the children's mental health, and harassed the children's relative caretaker, D.O., during the course of the proceedings. The social worker noted Mother "has not demonstrated any behavioral change that indicates that she would be able to care for the children if they were returned to [her] care." The social worker stated Mother has displayed no understanding of the impact on her children, is unable to control her anger, is resistant to feedback, and is unable to listen to other individuals' perspectives. Due to this lack of progress, the Agency concluded "there is no substantial probability of return[ing]" minor to Mother's care and recommended family reunification services be terminated.

Following a contested hearing, the court denied Mother's request to return minor to her care, extend services, or resume visitation. The court found by a preponderance of the evidence that the return of minor to the physical custody of Mother would "create a substantial risk of detriment to the [minor's] safety, protection, and both physical and emotional well-being." The court found reasonable services were offered to Mother and there was not a substantial probability minor would be returned to Mother's custody within six months. Accordingly, the court scheduled a section 366.26 hearing.

In advance of the section 366.26 hearing, the Agency filed its report and recommendation. That report recommended a permanent plan of adoption for minor.

Mother failed to appear at the subsequent section 366.26 hearing because she was hospitalized. Mother's counsel informed the court "she's willing to submit on this recommendation. She supports her son and she knows that this is what her son wants right now at this time in his life." When asked whether Mother's counsel could waive Mother's appearance at the hearing, her counsel responded, "I don't know if I would waive her appearance. I'm a little lost on that," but proposed proceeding with the condition that Mother could contest the submission within two weeks following the hearing. The court then clarified Mother "is submitting on the report, so she's not wishing to be heard further . . . [¶] . . . [¶] . . . to present additional argument or evidence." Mother's counsel affirmed that understanding, and requested a referral to mediation to potentially allow continued contact after adoption. The Agency opposed the referral. The court proceeded with the hearing, ordered the referral, terminated parental rights, and found the permanent plan of adoption to be appropriate and ordered adoption as the permanent plan. Mother timely appealed.

## II. DISCUSSION

### A. *Waiver*

The Agency contends Mother waived her right to appeal by submitting on the Agency's recommendation that her parental rights be terminated.

Ordinarily, submitting "on a social worker's recommendation dispels any challenge to and, in essence, endorses the court's issuance of the recommended findings and orders. Consequently, a parent who submits on a recommendation waives his or her right to contest the juvenile court's decision if it coincides with the social worker's recommendation." (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 813, citing *In re Richard K.* (1994) 25 Cal.App.4th 580, 590.) However, when a parent submits on a particular

8

report and thereby acquiesces to the evidence, the parent preserves the right to challenge the sufficiency of the evidence to support a particular legal conclusion. (*In re Tommy E.* (1992) 7 Cal.App.4th 1234, 1237.) In that situation, the parent does not waive "his or her right to challenge the propriety of the court's orders." (*In re Richard K.*, at p. 589.)

Here, the record of the section 366.26 hearing is unclear as to whether Mother's counsel submitted on the social worker's report or on the social worker's recommendation. Counsel initially stated Mother was "willing to submit on this recommendation." However, when the court sought clarification and asked, "I guess you are saying that she is submitting on the report, so she's not wishing to be heard further . . . [¶] . . . [¶] . . . to present additional argument or evidence," Mother's counsel responded, "Correct." The minute order also reflects that Mother submitted on the report, not the recommendation.[3] And Mother could not clarify her intended waiver because she was not present at the hearing. Given this ambiguity, we reject the Agency's claim of waiver.[4]

### B. *Appointment of Guardian Ad Litem*

A parent who is mentally incompetent must appear in juvenile dependency proceedings through a guardian ad litem. (*In re Sara D.* (2001) 87 Cal.App.4th 661, 665.) The test for incompetence in that context is whether the party has the capacity to understand the nature or consequences

---

[3] Generally, the reporter's transcript prevails when in conflict with the minute order. (*Arlena M. v. Superior Court* (2004) 121 Cal.App.4th 566, 569–570.) Here, however, the transcript itself is ambiguous and the minute order supports one interpretation—namely, that Mother submitted on the report.

[4] Mother also argues she did not waive this appeal by failing to challenge the initial appointment of the guardian ad litem by way of a writ application. The Agency does not contest her position on this issue.

of the proceedings and is able to assist counsel in representing his or her interests. (*In re Christina B.* (1993) 19 Cal.App.4th 1441, 1450–1451.) If the court concludes the parent is not competent and makes an appointment, the guardian ad litem is afforded the power to control the litigation of the action on behalf of the affected parent. (*In re Sara D.*, at p. 668.) For this reason, the parent "has a direct and substantial interest in whether a guardian ad litem is appointed." (*Ibid.*)

Unless the parent consents to the appointment of a guardian ad litem, due process considerations require the juvenile court to hold an informal hearing and give the parent the opportunity to be heard before making an appointment. (*In re Sara D.*, *supra*, 87 Cal.App.4th at p. 663.) At the hearing, the court or counsel must explain to the parent the purpose of the guardian ad litem and the grounds for believing that one is necessary, and a parent who opposes the appointment must have the opportunity to try to persuade the court that the appointment is not necessary. (*Id.* at pp. 671–672.)

### 1. *Due Process*

#### a. **Relevant Factual Background**

At the beginning of the detention hearing, Mother's attorney informed the court he "spoke with [Mother] for probably 20 minutes today, and had an opportunity to read the detention report, and listened to what she had to tell me, and I'm not sure she understands the nature of the proceedings occurring here today. As a result of that, I'm not sure she would be able—on her own to be able to mount a vigorous defense to the allegations contained in the Petition. And it is therefore my request that a guardian ad litem be appointed to essentially step into her shoes. And I think it will make it—

10

cause it to be much more effective for me, as her lawyer, to be able to mount a vigorous defense, because I believe this matter will go to contest."

The court cleared the courtroom and directed Mother's counsel to question her under oath to explain the basis for his request to appoint a guardian ad litem. Mother's counsel only asked one substantive question of Mother: "[D]o you know why the children were removed from you?" In response, Mother explained that on the day of the father's funeral, a social worker visited and stated Mother could not be near the children due to an active restraining order. Mother then stated she and the father had requested the restraining order be withdrawn because of the father's poor health, and the restraining order "was in effect so that the oldest daughter would benefit from his 401K." She also complained about the father's brother, who was initially caring for minor and Je.O. after they were removed from the family home, and asserted he was "not taking good care of my children. I need them to be at a temporary housing place, because there is feeling there he had with myself."

Following Mother's response, the court stated, "Okay. Thank you. The Court will grant [Mother's counsel's] request, and appoint Mr. Joens as guardian ad litem for [Mother]." The court then reopened the courtroom, and continued the detention hearing so the guardian ad litem could be present.

### b. Analysis

Here, Mother's counsel asked the court to appoint a guardian ad litem to "step into [Mother's] shoes" because he was not sure Mother understood "the nature of the proceedings" or could "mount a vigorous defense to the allegations contained in the Petition." Neither the court nor Mother's counsel explained to Mother the purpose of a guardian ad litem, such as by

11

explaining the role of a guardian or what authority Mother would be ceding to the guardian. (See *In re Sara D.*, *supra*, 87 Cal.App.4th at pp. 671–672.)

Then, during the hearing, Mother was asked only one substantive question by her counsel—"[D]o you know why the children were removed from you?" In response, Mother was able to express a coherent, if misguided, position that she repeated throughout the proceedings—namely, that her children were removed due to an unresolved restraining order. Undoubtedly, Mother's answer did not encompass the issue of abuse. But Mother's response tracked her ongoing position that the children were never subjected to emotional or physical abuse. And neither the court nor Mother's counsel asked any follow-up questions or attempted to elicit further responses regarding Mother's understanding of the petition. Unfortunately, denial and minimization of abuse occurs in dependency cases, and Mother's lack of insight does not indicate a lack of mental competency.

Moreover, Mother was not given an opportunity to respond and "provide the court with the most accurate picture of the circumstances so that it can make an informed decision." (*In re Sara D.*, *supra*, 87 Cal.App.4th at p. 672.) Instead, once Mother provided her initial response, the court stated, "Okay. Thank you," and appointed a guardian ad litem. This limited inquiry, with a lack of guidance to Mother about the impact of a guardian ad litem appointment and no opportunity for her to respond, was insufficient to comply with due process.[5]

---

[5] Because we conclude the appointment of a guardian ad litem violated Mother's due process rights, we need not address Mother's argument that insufficient evidence supported the appointment.

12

### 2. *Harmless Error*

Although appointment of the guardian ad litem violated Mother's right to due process, a due process violation concerning the appointment of a guardian ad litem for a parent in a dependency proceeding is subject to harmless error analysis. (*In re James F.* (2008) 42 Cal.4th 901, 918–919 (*James F.*).) "In *James F.*, our Supreme Court determined that a juvenile court's violation of a parent's due process rights in a dependency proceeding may be deemed harmless '[i]f the outcome of a proceeding has not been affected' by the violation."[6] (*In re Esmeralda S., supra,* 165 Cal.App.4th at p. 93.)

Mother contends the appointment of the guardian was prejudicial because the guardian "consented to the inappropriate delegation of visitation with the children to the social worker," rather than seeking therapeutic visitation and family counseling. Mother argues had such services been provided, "it may have led to a different result at the permanency planning hearing." We disagree.

First, Mother has not demonstrated the court would have allowed ongoing visitation. The Agency filed a motion to terminate visitation because it was detrimental to minor's and Je.O.'s well-being. Mother engaged in inappropriate discussions with the children, leaving them distraught for an extended period following her visit. The children also were adamant that they would not attend future visits with Mother. In light of this evidence, the

---

[6] While courts are split on whether the appropriate standard is harmless beyond a reasonable doubt or clear and convincing evidence, we need not resolve this dispute. (Compare *Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1514–1515 [clear and convincing evidence] with *In re Esmeralda S.* (2008) 165 Cal.App.4th 84, 94 [beyond a reasonable doubt].) Under either standard, we find the error harmless.

court likely would have granted the Agency's motion to suspend visitation. (See *In re Julie M.* (1999) 69 Cal.App.4th 41, 50 [A "parent's liberty interest in the care, custody and companionship of children cannot be maintained at the expense of their well-being. [Citation.] While visitation is a key element of reunification, the court must focus on the best interests of the children 'and on the elimination of conditions which led to the juvenile court's finding that the child has suffered, or is at risk of suffering, harm specified in section 300.' [Citation.] This includes the 'possibility of adverse psychological consequences of an unwanted visit between mother and child.' "].)

Undoubtedly, the modified visitation order agreed to by Mother's counsel and the Agency—no visitation unless approved by the social worker as being in minor's best interests—appears problematic. (See, e.g., *In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1476–1478 [juvenile court cannot impermissibly delegate to the child's therapist, child protective services agency, or any third person, unlimited discretion to determine whether visitation is to occur].) But Mother is not challenging the validity of the modified visitation order but rather whether the appointment of the guardian ad litem caused prejudice to her. And on that question, the guardian's agreement to modify visitation—which sought to avoid an order prohibiting visitation and a finding of detriment—arguably preserved more flexibility for Mother to reinstate visitation.

While Mother contends the guardian should have sought therapeutic visitation, she cites to no evidence that the Agency would have agreed to such visitation or that the court would have entered such an order. (See *James F.*, *supra*, 42 Cal.4th at p. 918 ["it is reasonable to infer, in the absence of evidence to the contrary, that a guardian ad litem has acted zealously to

14

preserve the parent's interest in the companionship, care, and custody of the child"].)  Such speculation does not amount to evidence.

Second, Mother fails to demonstrate the termination of parental rights arose from the lack of visitation.  For the court to order extended reunification services, it was required in part to conclude Mother "made significant progress in resolving the problems that led to [minor's] removal" and "demonstrated capacity and ability to complete the objectives of the treatment plan."  However, the record demonstrates a concerning lack of progress, specifically around Mother's ability to acknowledge her emotional and physical abuse of minor and Je.O.  Both the Agency's 12-month status review report and the section "366.26 WIC Report" note Mother continues to deny the substantiated allegations of abuse and neglect that the children experienced while in her care.  The status review report expounds upon Mother's denials, stating:  "[Mother] is adamant that 'nothing happened,' stating the children are lying and she never abused the children . . . . For the last 12 months, [Mother] has maintained a narrative that she does not believe her children are being truthful with the [Agency], their therapist, their attorneys, their CASA [(court-appointed special advocate)], their teachers, or their extended family members regarding their disclosures of abuse and neglect while in her care, and she maintains that the older sister, [D.O.] is 'brainwashing' the children."  Mother "unwaveringly believes she was 'the best mother in the world.' "  The social worker explained that over the past year of services, Mother "has continued to fail to understand the impact of the abuse and neglect on the children's mental health, and emotional development."

In addition to Mother's refusal to acknowledge her past abuse, the children "report[ed] hundreds of incidences of ongoing harassment" toward

15

them and their caregiver, D.O., "through constant phone calls, voicemails, text messages, picture messages, and entreaties" over the past year. This harassment resulted in criminal prosecution of Mother and an extension of the existing restraining order. Mother also demonstrated ongoing emotional dysregulation through tears, yelling, and making demands while interacting with the Agency. The Agency received no documentation from Mother that she engaged in any mental health services or completed the teenager parenting program, and Mother's counselor for her "managing emotion class" informed the social worker he did not believe Mother's behavior had changed since the beginning of the program.

The court's decision to terminate parental rights arose from Mother's failure to demonstrate any behavioral changes or acknowledge and address the abuse and neglect underlying the petition. And, as a result of Mother's failure to acknowledge the harm she caused her children, the court held minor's placement to be both necessary and appropriate. The termination of parental rights was not based on the lack of visitation. Rather, it was primarily focused on Mother's conduct toward minor, Je.O., and D.O. Accordingly, appointment of the guardian ad litem and his subsequent agreement to limit Mother's visitation, did not meaningfully impact Mother's ability to reunify with minor. Rather, her own conduct and consistent denials of any abuse were the primary causes of her failure to reunify and, ultimately, the termination of her parental rights.

### III. DISPOSITION

The order is affirmed.

16

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

SANCHEZ, J.

A159723
*In re J.O.*