Filed 5/8/15  C.C. v. Superior Court CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| C.C., et al.,<br><br>        Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>        Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU, et al.,<br><br>        Real Parties in Interest. | A144095<br><br>(Contra Costa County<br>Super. Ct. Nos. J14-00873, JI4-00874,<br>J14-00875, J14-00876) |

Petitioners Joseph E. (father) and C.C. (mother) seek extraordinary writs from this court pursuant to California Rules of Court, rule 8.452.[1]  They seek to prevent a hearing from being conducted pursuant to Welfare and Institutions Code section 366.26[2] on May 18, 2015 regarding their four children.  Father and mother contend the juvenile court improperly denied them each family reunification services at disposition.  We conclude the juvenile court did not err in doing so pursuant to section 361.5, subdivision (b)(13), which allows the court to deny reunification services because, among other things, of clear and convincing evidence that "the parent . . . of the child has a history of extensive,

---

[1]  Father refers to a previous number for this rule, California Rules of Court, rule 38.1.  (See *Tyrone W. v. Superior Court* (2007) 151 Cal.App.4th 839, 845.)

[2]  All statutory references herein are to the Welfare and Institutions Code.

abusive, and chronic use of drugs . . . and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition[.]"

Accordingly, we deny mother's and father's petitions on their merits.

# I.

# BACKGROUND

In August 2014, the Contra Costa County Bureau of Children and Family Services (Bureau) filed four petitions pursuant to section 300, subdivision (b), one each regarding mother and father's four children, J.E., then age twenty three months, Josiah E., age three, Julian E., age eight, and Josef E., age nine. The children were detained and placed with a relative.

## A. *The Court's Jurisdictional Ruling*

At the September 2014 jurisdictional hearing, father and mother pleaded no contest to amended petition allegations and stipulated that the allegations constituted a basis for the court to assume jurisdiction. These allegations were that mother and father had not provided adequate and consistent medical care for their children in specified ways and had pervasive substance abuse problems that impaired their ability to parent, in that they were using methamphetamine and marijuana.

In connection with the jurisdictional hearing, father (and his counsel) executed a "waiver of rights" form. Father indicated on the form that he understood the amended petition and was pleading no contest to the allegations. Under a section entitled "Consequences," he initialed a statement that read, "I understand that if the petition is found to be true and the child is declared a dependent of the court, the court may assume custody of the child[.]" The remainder of the sentence, which had indicated that it was possible that no reunification services would be offered or provided, was crossed out by hand. In its place, it was handwritten, "Reunification services will be offered to this parent."

The court's written order for the jurisdictional hearing states that the court read and explained the allegations of the petition. The order also states that the court advised the parents of the possible consequences of admitting allegations of the petition, mother

2

and father stated "no threats, inducements or promises were made by anyone re dispo of charges in petition," and mother and father made intelligent waivers of their rights.

## B. *The Court's Disposition Ruling*

At the request of minors' counsel, the juvenile court held a contested disposition hearing. As we will discuss, minors' counsel argued that the court should bypass reunification services for both parents pursuant to section 361.5, subdivision (13).

The Bureau submitted an October 29, 2014 disposition report in which it reported on both parents and made recommendations. According to the Bureau, mother had "jumped right into working on her Court ordered case plan." She was attending a recovery program five days a week and had begun random drug testing. She had tested negative three times, missed two testing dates that were treated as positive results, and had been advised not to miss any more testing dates. Mother reported that she had started working full-time as a waitress and was saving money to secure housing for her children. The Bureau had had limited contact with father, who was enrolled in an inpatient residential treatment program that required a two- month communications "black-out" period. The Bureau recommended that the children remain in out-of-home care and family reunification services be provided to mother and father.

The contested disposition hearing began on December 8, 2014. The Bureau's case worker and the author of its disposition report, Alesha Jones, testified. Along with what we have already summarized from the disposition report, Jones testified that mother had been visiting the children weekly, but missed a visit over Thanksgiving after reporting to Jones that she would be gone for two weeks. During that time, mother missed a drug test without excuse. Mother was attending her treatment program three to five days a week as required, was attending Narcotics Anonymous (NA) programs, and had previously completed a drug program as part of a previous dependency case.

Jones testified that father had participated in drug testing in his residential treatment program, but had not tested with the Bureau. Jones had left numerous messages for him, which father said he had not received. She said father was actively engaged in treatment.

Jones continued to recommend reunification services for mother and father. She thought the children had healthy attachments to their parents.

At minors' counsel's request, the court took judicial notice of three adult criminal files. In the first, case number 4-147155-6, the criminal court in 2006 placed father on probation for a felony, the unlawful possession of a controlled substance, and required that he participate in treatment and testing. He was found repeatedly to have failed to participate in court-ordered drug treatment and his probation was terminated unsuccessfully later in 2006.

In the second, case number 4-175899-4, father was charged in April 2013 and convicted in May 2013 of felony possession of methamphetamine, placed on two years probation, and required to register as a narcotics offender, participate in testing and submit to search and seizure. He was found in violation of probation twice in that case, resulting in additional county jail time, and ordered to participate in counseling. He tested positive for methamphetamine on April 1 and April 11, 2014. This case was active and open.

In the third case, case number 4-150742-5, mother pleaded guilty to a misdemeanor, the unlawful possession of methamphetamine, and was ordered to participate in a drug treatment program, among other things. In June 2008, the court found that mother had successfully completed the program. The case was later dismissed.

The court continued the hearing to January 21, 2015, for lack of time. The Bureau submitted a January 16, 2015 update memorandum with the court. The Bureau had had no contact with father after a December 2014 court hearing and his treatment program director reported that father had not attended the program since late November 2014. Mother's drug and alcohol counselor said mother had poor attendance in November 2014, attending treatment for only two days that month. She did not attend the program in December 2014 until the 10th of that month; after she was warned that she would be discharged, she met with her counselor and "was put on a contract." After that, she missed "four days which were excused due to mother reporting that she was 'burnt

4

out on work' " and participated actively in January. She had three negative tests and a missed test in each of November and December 2014, and had one negative test in January 2015. The Bureau recommended certain case plan modifications and continued to recommend reunification services for both parents.

At the January 21, 2015 session of the contested disposition hearing, the Bureau submitted its update memorandum for the court's consideration. At minors' counsel's request, the court took judicial notice of court findings and orders in a previous 2007 dependency case involving the family. Minors' counsel also indicated that father had been arrested on an outstanding warrant. She asked the court to bypass reunification services for both parents in light of their failed participation in substance abuse treatment.

Mother testified at the hearing. She said she had a drug addiction, had not used illegal substances since August 6, 2014, and had engaged in outpatient services and NA meetings two or three times a week since September 17, 2014. She was now on level two of NA. She had also connected with friends who were clean and sober, was working and was engaged in Bible study.

Mother acknowledged that she had completed treatment programs as a part of her previous dependency case. Although she had relapsed, she believed she could maintain her sobriety if given the opportunity to reunify with her children. She "was young and stupid then," but now wanted more to be with her children. If the court required it, she would be willing to participate in an inpatient program as well. She was seeing her children about once a week for about three hours and spoke with them by phone about once a week as well. She was not currently in a relationship with father and would be willing to remain in that status if it improved her chances of reunification with her children.

On cross-examination by minors' counsel, mother said she had visited her grandmother in Alameda, California for two weeks around Thanksgiving 2014. She did not see her children and was not aware that she missed a drug test during that time. She also acknowledged missing "a couple of Fridays" of her drug treatment program,

testifying that it was because she worked late Thursday nights. However, her work schedule had changed and she now realized the treatment program was more important.

Mother also testified that around 2007 and 2008, she completed an outpatient drug treatment program as ordered by the criminal court and another as ordered by the juvenile court. Her children were returned to her custody around September 2008. She registered for a Rubicon program in 2014, but could not attend because she started a job.

She acknowledged missing a few drug tests in November 2014, but said she now woke up every morning and checked on whether she was required to test. She was testing weekly in her outpatient drug treatment program and to her knowledge had not tested positive.

In closing argument, minors' counsel argued that the court should bypass reunification services for both parents pursuant to section 361.5, subdivision (b)(13). Counsel for mother, father and the Bureau were of the view that reunification services should be provided.

The court denied both parents family reunification services pursuant to section 361.5, subdivision (b)(13). In doing so, it noted the previous cases of which it had taken judicial notice, and noted that in the present case, the parents failed to meet the significant medical needs of their oldest child, Josef,[3] and were found to have pervasive substance abuse problems. The court also pointed out that, as reported by the Bureau in its jurisdictional report, mother at first denied having a history of using any substance other than marijuana.

The court then discussed the Bureau's disposition report and January 2015 update memorandum. It noted that mother had not regularly participated in testing and had failed to consistently participate in her outpatient program, father was appearing at the

---

[3] At the jurisdictional hearing, the parents pleaded no contest to, and the court sustained, the allegations that Josef had been diagnosed with hearing loss in April 2012, had not shown up thereafter for many related appointments, had not followed through when referred for surgery for tubing in his ears in January 2013 and had last been seen for his ears in December 2012.

hearing in custody because of a probation violation in a case involving substance abuse, and the two school-age children, Josef and Julian, had each missed school days or were tardy for dozens of days in the last year.

The court was perplexed by the Bureau's recommendation of reunification services under the circumstances. It asserted that section 361.5, subdivision (b) (13) was intended for cases such as the one before it, "where children are in and out of court proceedings, where they have no stability in their lives because of their parents' chronic substance abuse problems. When I see attendance records at school like that, children not eating, children not getting their basic medical needs met—I will not order services in this case on this history and this record."

The court specifically found that the reunification services bypass allowed in section 361.5, subdivision (b)(13) applied "certainly" because of the parents' past resistance to court-ordered treatment of their substance abuse problems and "arguably" because of their repeated failure to participate in the treatment ordered by the court in the present case, which, as stated in section 361.5, subdivision (b)(13), is also a ground for denying a parent reunification services.[4] The court further ruled that there was not clear and convincing evidence that reunification was in the best interests of the children. Subsequently, the court issued a written order in which it denied the parents family reunification services pursuant to section 361.5, subdivision (b)(13) both because of their past resistance to court-ordered treatment and their repeated failure to participate in the treatment ordered by the court in the present case.

The court informed the parents of their right to seek a writ petition from this court and of a hearing pursuant to section 366.26 scheduled for May 18, 2015. The parents'

---

[4] This other portion of section 361.5, subdivision (b)(13) states that "[r]eunification services need not be provided to a parent . . . when the juvenile court finds by clear and convincing evidence that the parent "has a history of extensive, abusive, and chronic use of drugs . . . [and] has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible."

writ petitions and requests for stays followed. By order filed on March 13, 2015, this court issued an order to show cause and denied mother's and father's requests to stay the May 18, 2015 hearing pending the outcome of their petitions. No responses to the petitions have been filed.

## II.

## DISCUSSION

### A. *Father's Petition Arguments*

Father argues we should grant his petition for two reasons, neither of which is persuasive.

### 1. Father Has Not Established That He Should Be Allowed to Withdraw His No Contest Plea.

Father first argues that he pleaded no contest to the amended petition allegations at the jurisdictional hearing because, as indicated on his waiver form, he understood that he would receive family reunification services and that the court was required to provide these services. Since the court did not, he should be allowed to withdraw his no contest plea. We conclude father has not established the court was required to provide him with reunification services based on his waiver form.

Specifically, father argues that (1) "[t]he court found the parents made a knowing and intelligent waiver of their rights and that they understood the possible consequences" as required by California Rules of Court, rule 5.682(e); (2) the waiver form unambiguously indicated that he was to be provided reunification services; (3) the juvenile court "accepted the form thereby binding it" (a proposition for which he cites no legal authority); (4) we should not conclude he waived his appellate claim by not first raising it in the court below, citing California Rules of Court, rule 5.682(e) and *Arlena M. v. Superior Court* (2004) 121 Cal.App.4th 566, 569; and (5) we should conclude the error is reversible per se pursuant to *Arlena M.* and remand the matter so that he can be "allowed to withdraw his plea or get the benefit of his plea and receive reunification services."

8

We do not need to address more than father's first three points.  Father is correct that the court found that he and mother made a knowing and intelligent waiver of their rights and understood the possible consequences of their waiver, but the court's findings work against, rather than support, his claim.  The court's written order for the jurisdictional hearing indicates that mother and father made intelligent waivers of their rights after the court advised them of the possible consequences of admitting allegations of the petition, and mother and father stated that "no threats, *inducements or promises were made by anyone re dispo of charges in petition*."  (Italics added.)  This finding indicates that the court did *not* bind itself to any agreement or promise to provide reunification services, and that father did not reasonably rely on any such agreement or promise in pleading no contest.

Father does not address this finding, nor point to anything in the record or in law that indicates the juvenile court obligated itself to provide reunification services (the record indicates only that the form was filed with the court on the same day as the hearing).  Indeed, father has not provided a reporter's transcript of the hearing, which presumably would shed further light on the subject, although "[o]rdinarily in writ proceedings the petitioner has the burden of furnishing a sufficient record."  (*Tex-Cal Land Management v. Agric. Labor Relations Bd.* (1979) 24 Cal.3d 335, 351.)

"[W]e presume that a judgment or order of the lower court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' "  (*People v. Giordano* (2007) 42 Cal.4th 644, 666.)  The petitioner bears the burden of affirmatively showing error on the record.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  We conclude, based on the record before us, that father has failed to meet his burden here.

9

**2. Substantial Evidence Supports the Court's Denial of Family Reunification Services to Father Pursuant to Section 361.5, Subdivision (b)(13).**

Father next argues that, even if the juvenile court could deny him family reunification services pursuant to section 361.5, subdivision (b)(13), it should have ordered that he receive them. We disagree.

As we have stated, section 361.5, subdivision (b)(13) allows the juvenile court to deny a parent family reunification services based on, among other things, clear and convincing evidence that the parent has a history of extensive, abusive and chronic use of drugs and has resisted prior court-ordered treatment for such a problem during the three-year period prior to the filing of the petition before the court.

"We affirm an order denying reunification services if the order is supported by substantial evidence." (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 839 [addressing denial pursuant to section 361.5, subdivision (b)(10)].) " 'In making this determination, we must decide if the evidence is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the court's order was proper based on clear and convincing evidence.' " (*Id.* at pp. 839-840.)

Father does not challenge the court's finding that he had a pervasive substance abuse problem that impaired his ability to parent. He acknowledges that he was in a court-ordered drug treatment program in 2006, via the criminal court, and that this satisfies the section 361.5, subdivision (b)(13) requirement based on *In re Brian M.* (2000) 82 Cal.App.4th 1398.

However, father argues, he did not "resist" prior court-ordered treatment as required by the first portion of section 361.5, subdivision (b)(13). He contends that the only evidence in the record of "resistance" is his May 2013 felony conviction for possession of methamphetamine and an April 2014 positive test for methamphetamine and THC. He contends that a mere relapse does not satisfy the "resistance of treatment" standard, as indicated by the far more extensive drug use discussed in *Laura B. v. Superior Court* (1998) 68 Cal.App.4th 776, 780 (*Laura B.*).

10

We disagree. The record contains sufficient evidence to satisfy the "resistance to treatment" standard contained in section 361.5, subdivision (b)(13). As indicated in *In re Brian M.*, "resistance to treatment" can include return to substance abuse after completion of a rehabilitation program. (*In re Brian M.*, *supra*, 82 Cal.App.4th at p. 1402, citing *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 73.) As indicated in *Laura B.*, the case cited by father, proof of resistance can "come in the form of dropping out of programs, but it may also come in the form of resumption of regular drug use after a period of sobriety." (*Laura B.*, *supra*, 68 Cal.App.4th at p. 780; cf., *Karen H. v. Superior Court* (2001) 91 Cal.App.4th 501, 504 ["[h]ad there been a single positive test or even several positive tests within a period of a few days, petitioner's drug use might have been considered only a relapse"].) "The parents . . . can passively resist by participating in treatment but nonetheless continuing to abuse drugs and alcohol, thus demonstrating an inability to use skills and behaviors taught in the program to maintain a sober life." (*Karen S. v. Superior Court* (1999) 69 Cal.App.4th 1006, 1010 (*Karen S.*).) By resisting treatment, the parent has demonstrated that reunification services "would be a fruitless attempt to protect the child because the parent's past failure to benefit from treatment indicates that future treatment also would fail to change the parent's destructive behavior." (*Ibid.*)

The record indicates that from April 2013 to August 2014, when the Bureau filed its dependency petition, father was convicted of felony possession of methamphetamine, tested positive twice in April 2014 for methamphetamine use, and, as the court found at the September 2014 jurisdiction hearing, had a "pervasive substance abuse problem which impair[ed] his ability to parent" in that he was using "methamphetamine and marijuana." This record shows more than an isolated relapse. The court could reasonably infer from this evidence that father was engaging in regular substance abuse during this period, which came after he previously failed to participate in court-ordered drug treatment in connection with his 2006 felony drug conviction, satisfying the

11

"resistance to treatment" part of the section 361.5, subdivision (b)(13) test. Father's argument to the contrary is unpersuasive in light of this substantial evidence.[5]

### 3. Father's "Best Interests" Argument Lacks Merit.

Father also argues that, even if his substance abuse came within the parameters of section 361.5, subdivision (b)(13), the court should not have denied him reunification services because "reunification is in the best interests of the children." Father's argument states, but then disregards, the legal standard the juvenile court was to apply and ignores altogether the scope of our review of the court's finding.

Generally, in a dependency proceeding, the children's best interests are held paramount. (E.g., *In re Tiffany G.* (1994) 29 Cal.App.4th 443, 450 [stating "we are obliged to hold paramount [the children's] best interests" and "consider the dependency law's objective of protecting them"].) "In enacting section 361.5, subdivision (b), the Legislature determined that, in certain situations, 'attempts to facilitate reunification do not serve and protect the child's interest.' [Citation.] Situations listed in that subdivision constitute circumstances in which the Legislature has recognized that 'it may be fruitless to provide reunification services . . . .' " (*Karen S., supra*, 69 Cal.App.4th at p. 1010.)

The Legislature provided that when a court makes a finding meriting denial of family reunification services to a parent pursuant to section 361.5, subdivision (b)(13), the court may further consider the best interests of the child, but "shall *not* order reunification for a parent . . . described in paragraph . . . (13) . . . of subdivision (b) *unless* the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c), italics added.) The court's statement at the end of the

_____

[5] The trial court also stated at the disposition hearing that father and mother "arguably" violated the other ground for denying reunification services stated in section 361.5, subdivision (b)(13), regarding the repeated failure to comply with treatment ordered pursuant to a case plan in the current case, and stated that they had done so in its subsequent written order. Father does not address this portion of the juvenile court's ruling and mother only refers to it in one sentence, when she contends there was no evidence that she failed to comply with a drug program on at least two prior occasions. We do not address whether father and mother also violated this portion of section 361.5, subdivision (b)(13) in light of our conclusions about their petition claims.

disposition hearing that there was not clear and convincing evidence that ordering reunification services was in the best interests of the children appears to have been made with this provision in mind.

Father argues the juvenile court should have ordered reunification services pursuant to the standard contained in section 361.5, subdivision (c),[6] i.e., he contends reunification was in the best interest of the children. He contends the record indicates that all of the children knew him, had a healthy attachment to him and wanted to be with him; that at the October 2014 disposition hearing session he was in a residential treatment program, thereby indicating his desire and effort to reunify with his children; and that, although he was in custody at the January 2015 disposition hearing session, this was not a new arrest, but because of a probation violation relating to his drug use in April 2014. He points out that the Bureau recommended that he receive reunification services and that even minors' counsel did not argue that the children did not want to be with their parents.

Father's arguments ignore the substantial evidence relied on by the court and contained in the record indicating there was not clear and convincing evidence that reunification was in the children's best interests. He leaves unaddressed the major concerns that the juvenile court referred to in its ruling, such as the lack of stability in the children's lives as a result of the parents' chronic substance abuse problems, that the parents had failed to participate in drug treatment in the present case (father having left his residential treatment program in late November 2014), the children's poor school attendance record, their problems getting enough to eat and the lack of attention to their basic medical needs. He also ignores other facts in the record, including parents' history of failing to obtain medical care for the children, leading to Julian's hospitalization, the repeated expulsions of the family from shelters and the injuries to three-year-old Josiah. Father does not explain why this evidence is insufficient to support the court's determination that there was not clear and convincing evidence that reunification was in

---

[6] Father incorrectly states the standard is contained in section 361.5, subdivision (b)(13), but correctly states the standard.

13

the children's best interests. We conclude that it is sufficient based on the record before us.

## B. *Mother's Petition Arguments*

### 1. The Petition Allegations and Substantial Evidence Support the Juvenile Court's Denial of Reunification Services to Mother.

Mother first argues that the sustained petition allegations are the only basis for the court's denial of family reunification services to her and legally insufficient to meet the requirements of section 361.5, subdivision (b)(13). We disagree.

As we have discussed, the juvenile court denied mother reunification services pursuant to section 361.5, subdivision (b)(13), which allows the court to do so based on, among other things, clear and convincing evidence that she had a history of extensive, abusive and chronic use of drugs and has resisted prior court-ordered treatment for her problem during the three-year period prior to the filing of the petition before the court.

Mother argues that there was no finding by the court that she had a history of extensive, abusive, and chronic drug and alcohol use or had resisted treatment, that "the failure of the petition to allege these facts precluded the court from making these findings and, hence, "there was insufficient evidence" for the court to apply section 361.5, subdivision (b)(13). Most specifically, she contends the juvenile court's sustaining of the allegation that she had a "pervasive substance abuse problem which impairs her ability to parent in that . . . mother admits to using methamphetamine and marijuana" is "legally insufficient to constitute chronic, habitual drug abuse," particularly in light of the finding that she was only "using" methamphetamine and marijuana.

Mother does not cite any legal authority for her argument and it is not persuasive. The word "pervade" means "to become diffused throughout every part of: spread throughout." (Webster's 3d New Internat. Dict. (2002) p. 1688.) "Pervasive" refers to something "that pervades or tends to pervade esp[ecially] in such a way as to be or become prevalent or dominant." (*Ibid*.) Given these expansive definitions, we see no reason why a "pervasive" use of methamphetamine and marijuana cannot encompass a

14

history of extensive, abusive and chronic use of drugs as required by section 361.5, subdivision (b)(13).

Furthermore, there was other evidence before the court that mother had an extensive, abusive and chronic drug use history and had "resisted" prior court-ordered treatment within the past three years prior to the filing of the petition. The Bureau, in its disposition report, stated that father and mother "[t]ogether . . . have had a chronic pattern of marijuana and methamphetamine abuse over the years." At the disposition hearing, the juvenile court took judicial notice of mother's pleading guilty in 2008 to misdemeanor possession of methamphetamine, and that she had completed a court-ordered treatment program that same year. Mother testified to having completed that program and another ordered as part of a dependency case in 2007 or 2008. Mother also testified that she had "a drug addiction" and "was unable to care for" her children. She said she had been sober since August 6, 2014, thereby indicating that she was not sober prior to that time.

This evidence—none of which mother contested—and the court's finding that mother's parenting was impaired because she had a "pervasive" drug problem due to her use of methamphetamine and marijuana, is substantial evidence of clear and convincing evidence satisfying the requirements of section 361, subdivision (b)(13). Furthermore, the court relied on this evidence to deny mother reunification services. It referred to, among other things, the "parents' chronic substance abuse problems" and found that section 361, subdivision (b)(13) applied based "on this history and this record." Therefore, mother's "legally insufficient" argument lacks merit.

Mother also argues that the juvenile court abused its discretion in denying her reunification services because the Bureau did not request denial and the court's order was inconsistent with the best interests of the children. Mother contends that she was in substantial compliance with every component of her case plan and had a strong parent-child bond with her children, that reunification services would be beneficial to her children and that the Legislature in enacting the juvenile dependency statutes indicated in section 300.2 that families should be preserved whenever possible.

15

Mother's arguments ignore both the substantial evidence in support of the juvenile court's denial of reunification pursuant to section 361.5, subdivision (b)(13) and the Legislature's purpose in enacting this exception, both of which we have already discussed. Mother does not establish that the juvenile court abused its discretion.

### 2. The Juvenile Court Did Not Improperly Shift the Burden of Proof.

Finally, mother argues that the juvenile court improperly shifted the burden of proof to her, rather than the Bureau, when the court found there was not clear and convincing evidence that reunification was in the best interests of the children. She notes there is a general presumption in favor of reunification services, as stated in *Riverside County Dept. of Public Social Services v. Superior Court* (1999) 71 Cal.App.4th 483, 487, and contends the court's denial was improperly based entirely on this purportedly improper finding.

Mother's argument is without merit. As we have discussed, the court's ruling was based on clear and convincing evidence that satisfied section 361.5, subdivision (b)(13). The court's finding of a lack of clear and convincing evidence that reunification was in the best interests of the children appears to be in order to satisfy section 361.5, subdivision (c)'s instruction that "[t]he court shall *not* order reunification for a parent . . . described in paragraph . . . (13) . . . of subdivision (b) *unless* the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (Italics added.) We see no reason to disagree with this ruling.

### DISPOSITION

Mother's and father's petitions for extraordinary writs are denied on their merits. This opinion is final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).

16

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

MILLER, J.