Filed 11/18/14; pub. order 12/5/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| Adoption of I.M., a Minor. | B255038 |
| | (Los Angeles County |
| | Super. Ct. No. BT55600/BN5881) |
| C.M., | |
| Plaintiff and Respondent, | |
| v. | |
| S.R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Amy Pellman, Judge. Affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Janette Freeman Chocran, under appointment by the Court of Appeal, for Minor.

Angela M. Rooney for Plaintiff and Respondent.

\* \* \* \* \* \*

S.R., the presumed father of I.M. (father), appeals from the trial court's order finding I.M.'s adoption by her stepfather could proceed without father's consent. The court's order was based on the ground that father had failed to communicate with I.M. and pay for her care and support for over one year, under Family Code section 8604, subdivision (b).[1] We affirm.

## PROCEDURAL BACKGROUND

Stepfather, C.M., filed a request to adopt I.M. in January 2013. I.M. was nine years old at the time. The request did not indicate whether father would consent to the adoption. Mother signed her consent to stepfather's adoption of I.M. in May 2013.

The Los Angeles County Department of Children and Family Services (DCFS) contacted father, who was incarcerated. Father indicated he did not consent to the adoption.

In July 2013, stepfather filed a petition requesting an order freeing I.M. from father's custody and control. The petition stated stepfather was the spouse of mother, who had sole legal and physical custody of I.M. It further stated father was incarcerated for felony convictions and had not had contact with I.M. since 2006. The court issued a citation to father advising him that he could appear on September 4, 2013, to show cause why I.M. should not be declared free from his custody and control.

Father filed a motion for continuance and request for a removal order under Penal Code section 2625 so that he could be present for the hearing. His motion also requested that the court appoint Attorney Mitchell Sperling to represent him because Sperling was already "knowledgeable about some aspects of this matter." Father also filed an opposition to stepfather's petition. Sperling appeared at a hearing on August 21, 2013, on behalf of father and indicated father's wish to contest the petition. The court instructed Sperling to file a substitution of attorney and set the matter for trial on December 17, 2013.

---

[1]     Further undesignated statutory references are to the Family Code, unless otherwise stated.

2

The probation office submitted a report recommending the court grant stepfather's petition. DCFS submitted a report recommending conditional approval of stepfather's adoption. Stepfather filed a declaration from mother in response to father's opposition.

On the December date set for trial, counsel for stepfather and counsel for I.M. appeared. Counsel for father did not appear, but he had communicated via telephone with stepfather's and I.M.'s counsel "regarding his inability to be present and his assumption that the matter had been continued due to settlement." Stepfather's and I.M.'s counsel informed the court that the parties had reached a settlement but had yet to finalize it, and they had circulated a contact after adoption agreement, which father's counsel had mailed to father. The court set a status conference for February 5, 2014, and continued trial to February 20, 2014.

At the status conference on February 5, father's counsel appeared telephonically. The parties continued to indicate there was a possibility of settlement. On February 20, the court went forward with trial. Father's counsel appeared on his behalf.

After trial, the court found father was a parent within the meaning of section 8604, subdivision (b) in that he had left I.M. with mother for a period greater than one year, and he had failed to communicate with I.M. and pay for her care, support, and education during that time. The court further found father's failures to communicate and pay support were willful and without lawful excuse. The court ordered that the consent of father was not necessary for the adoption to proceed and no further notice of the proceedings need be given to father.

Father filed a timely notice of appeal from the court's order. Counsel for I.M. has filed a respondent's brief in which stepfather joins.

**FACTUAL BACKGROUND**

During these proceedings, father was incarcerated in Tehachapi, California. Father's opposition to stepfather's petition stated father had not abandoned contact with I.M. voluntarily; instead, mother had kept I.M.'s contact information from father and had intentionally prevented contact. Further, mother never asked for support for I.M. and never initiated contact with father, even though she was aware of how to contact him. Father

3

reported that he was on the wait list for enrollment in substance abuse prevention programs and parenting classes.

Mother's declaration in support of the petition explained she and father were together from early 2002 to June 2005, when they separated because father became abusive and was using methamphetamine. They never married. I.M. was born in June 2003. Father worked some odd jobs while he and mother were together, but he did "not really" provide support for the family. Father had seen I.M. only twice since the separation, both times when she was approximately two and a half years old.

Mother said she met stepfather when I.M. was three years old, and she married stepfather when I.M. was five years old. I.M. refers to stepfather as "daddy," and they have a father-daughter relationship. For example, stepfather taught her to swim and ride a bicycle, tucks her in at night, attends her soccer practices and orchestra performances, helps her with homework, and takes her to the "Daddy Daughter Dance" at school. In 2010, I.M.'s last name was legally changed to stepfather's last name. DCFS reported that stepfather's references described him as responsible, hardworking, caring, and trustworthy. Stepfather told the DCFS social worker that he viewed I.M. as his own child. I.M. told the social worker that she wanted stepfather to adopt her.

In July 2005, mother filed a petition to establish parental relationship to which father never responded. In June 2006, the court in that proceeding entered a default judgment for custody and support awarding mother sole physical and legal custody of I.M. The default judgment ordered that father pay 50 percent of reasonable uninsured health care costs for I.M. but did not otherwise impose a mandatory child support payment because father was unemployed at the time and had no income. The default judgment also ordered reasonable supervised visitation. Father never had supervised visitation with I.M. Father gave mother money for I.M.'s support once, sometime in 2006, in the amount of $500.

Mother obtained a three-year restraining order against father in August 2005, which restrained him from contacting her except for brief and peaceful contact as required for visitation. Despite the restraining order, mother said father continued making harassing telephone calls to her until she changed her telephone number.

Father filed an order to show cause (OSC) for child custody and visitation in August 2009. The parties scheduled a mediation conference on the OSC, but it did not occur because father failed to appear. At the OSC hearing in December 2009, at which father's counsel was present, the court ordered father could have visitation and contact with I.M. only if he completed reunification therapy. It also ordered father to submit to a full panel random drug testing. Father never engaged in reunification therapy.

Mother asserted she had not kept I.M.'s contact information from father, as father alleged. She had only changed her telephone number because of his harassing calls in violation of the restraining order. But father knew where she lived and worked and where I.M.'s maternal grandfather lived and worked. Mother had worked at the same firm since I.M. was three years old, and father had contacted her there before. He could have tried to contact I.M. through any of these means.

There were only two occasions when father asked to see I.M., both around 2008 or 2009, and mother did not give her consent because the circumstances were not consistent with the court orders in place. First, in 2008 or 2009, father was getting married in Las Vegas and wanted I.M., who was five or six years old at the time, to attend. Father contacted mother at her workplace. I.M. had not had contact with father in three to four years, and he had never before exercised his right to supervised visitation. The custody order required not only reasonable supervised visitation but mother's consent to I.M. traveling outside of Los Angeles County with father. Under these circumstances, mother did not give her consent. Second, in July 2009, father wanted I.M. to attend a birthday party for his other child. Mother believed the situation was not going to be supervised as required by the court order and did not permit I.M. to go to the party. Mother had not heard from father since July 2009.

The probation officer's report found that father had "clearly" abandoned his responsibilities to I.M., even prior to being incarcerated. The officer was also clear that stepfather had "maintained a positive and loving environment" for I.M., who was flourishing with stepfather and mother.

5

**DISCUSSION**

*1. Father's Absence at Trial*

Father contends the trial court erred by failing to issue a removal order for his transport to court and by proceeding in his absence. We are not persuaded.

Father relies on Penal Code section 2625, subdivision (d). This provision requires a court to order a prisoner-parent's temporary removal and production before the court only when the prisoner requests it *and* the proceeding seeks (1) to terminate the parental rights of the prisoner under Welfare and Institutions Code section 366.26 or part 4, division 12 of the Family Code (section 7800 et seq.); or (2) to adjudicate the child of the prisoner a dependent child. (Pen. Code, § 2625, subds. (b), (d); *In re Jesusa V.* (2004) 32 Cal.4th 588, 599.)

Penal Code section 2625, subdivision (d) does not apply here. The court conducted this proceeding under section 8604, which falls under part 2, division 13 of the Family Code—*not* part 4, division 12 of the Family Code, as the Penal Code requires for a mandatory removal order. Father presumes the hearing was a proceeding under section 7822 to terminate his parental rights, and thus fell under the requisite part of the Family Code. It was not. The differences between section 8604 and section 7822 are significant.

Section 8604 deals with whether the consent of birth parents is needed for adoption. Section 8604, subdivision (b) simply permits an adoption to proceed with the consent of the parent who has sole custody, and without the consent of the noncustodial parent, if the noncustodial parent has willfully failed to communicate with and support the child for over one year. (*In re Marriage of Dunmore* (2000) 83 Cal.App.4th 1, 4.) The narrowly drawn provisions of section 8604 operate to facilitate adoptions, especially stepparent adoptions, but the proceeding and order under this section do not terminate the noncustodial parent's rights. (*Ibid.*) It is the later adoption that may relieve the parent of his or her rights and obligations. (*Ibid.*; see also § 8617.) And, as one can determine from the record, the court's order from which father appealed did not terminate his parental rights or order I.M.

adopted.**2**  In fact, at the end of the proceedings, the court stated the parties would "come back for the adoption" proceedings at a later date.

Section 7822, on the other hand, makes abandonment an independent ground for termination of one or both parents' rights when the evidence shows the parent abandoned the child.  (§ 7822, subds. (a), (b); *In re Marriage of Dunmore, supra*, 83 Cal.App.4th at pp. 4-5.)  Unlike section 8604, section 7822 requires a finding of intent to abandon.  (*In re Marriage of Dunmore, supra*, at p. 5.)  Once the requisite finding under section 7822 has been made, the court may enter an order declaring the child free from the parent's custody and control, which terminates all parental rights and responsibilities.  (§§ 7802, 7803, 7820, 7822.)  "Whatever similarities may exist in the language in the two provisions, the consequences of a finding under section 7822 are vastly different from a finding under section 8604. . . .  [¶]  . . . Although the loss of the right to veto the adoption is significant, it is not the equivalent of a termination of parental rights or a declaration of freedom from parental custody and control under section 7803."  (*In re Marriage of Dunmore, supra*, at p. 5 & fn. 4.)

This was not a proceeding to terminate parental rights under the requisite part of the Family Code, and the court did not terminate parental rights or order I.M. free from father's custody and control.  Thus, the court had no mandatory obligation under Penal Code section 2625, subdivision (d), to order father's removal and transport to court.  Instead, the court had discretion to order father's removal and transport.  (Pen. Code, § 2625, subd. (e) ["In *any other action or proceeding* in which a prisoner's parental or marital rights are subject to

---

**2**  The minute order of the proceedings stated father's parental rights were terminated, but in the reporter's transcript, the court made no such finding.  In the transcript, the court found only that father failed to communicate with and pay for I.M.'s support for over one year, and his consent was therefore not required to proceed with adoption.  The formal order after the hearing also did *not* terminate father's parental rights.  When the minute order and the reporter's transcript differ, the reporter's transcript generally prevails as the official record of the proceedings.  (*Arlena M. v. Superior Court* (2004) 121 Cal.App.4th 566, 569-570.)  We hold the reporter's transcript (and the formal order) should prevail here.

7

adjudication, an order for the prisoner's temporary removal from the institution and for the prisoner's production before the court *may be* made by the superior court . . . ." (italics added)]; *In re Jesusa V., supra*, 32 Cal.4th at p. 599.) Father has not shown the court abused its discretion in failing to order his removal, especially given that father requested the court appoint counsel of his choice, the court did so, and counsel was present.

Father contends his counsel was ineffective because counsel did not object to proceeding in father's absence and instead "stood silently by." When the record is silent on why counsel acted or failed to act, and counsel was not asked to explain his or her actions in the trial court, we must reject the claim of ineffective counsel on direct appeal "'unless there simply could be no satisfactory explanation.'" (*People v. Kipp* (1998) 18 Cal.4th 349, 367.) Here, there is at least one obvious satisfactory explanation. "Because the trial court has discretion whether to order the prisoner's removal in this category of cases, 'it follows that such a case may proceed without attendance by the prisoner-parent.'" (*In re Jesusa V., supra*, 32 Cal.4th at p. 599.) Counsel could have rightly perceived that the court was not under a mandatory obligation to order father's removal, and thus any objection to proceeding without him would have been futile.

## 2. *Finding of Intent to Abandon Under Section 7822*

Father also contends the trial court erred because it could not terminate his parental rights without a finding of intent to abandon under section 7822. Father argues that, without this finding, there was no showing of parental unfitness as required by *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 849 (*Kelsey S.*) (holding that "[i]f an unwed father promptly comes forward and demonstrates a full commitment to his parental responsibilities—emotional, financial, and otherwise—his federal constitutional right to due process prohibits the termination of his parental relationship absent a showing of his unfitness as a parent").

As we explain in part 1 of the Discussion, the court in this case did not terminate father's parental rights under section 7822. It found father's consent was not necessary for the adoption to proceed under section 8604. These are two distinct ways to proceed to adoption. The actions causing a father's consent to become unnecessary may be tantamount to abandonment, but "abandonment" within the meaning of section 7822 is not an issue in a

8

stepparent adoption pursuant to section 8604. (*In re Jay R.* (1983) 150 Cal.App.3d 251, 258.)[3] In section 8604 proceedings, "the sole issue, other than the child's best interests, is whether the noncustodial parent had the ability to communicate with and provide for the child, but willfully failed to do so. [Citations.] In contrast, the essential element in an abandonment proceeding [under section 7822] is whether the parent failed to communicate with or provide for the child *with the intent to abandon the child.*" (*In re Jay R.*, at p. 258., italics in original.)

We disagree with father's premise that the court terminated his parental rights. As a result, we disagree that the court was required to make a finding of intent to abandon under section 7822 or parental unfitness under *Kelsey S.* There is no requirement that the court find an intent to abandon under section 8604.

## DISPOSITION

The order is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

---

**3**     *In re Jay R., supra*, 150 Cal.App.3d at page 258 construed Civil Code former sections 224 and 232, which were the predecessor statutes of Family Code sections 8604 and 7822, respectively. (*Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1015; *Adoption of Duckett* (1975) 48 Cal.App.3d 244, 246.)

9

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| Adoption of I.M., a Minor. | B255038<br>(Los Angeles County<br>Super. Ct. No. BT55600/BN5881) |
| C.M.,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>S.R.,<br><br>       Defendant and Appellant. | ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:*

The opinion in the above-entitled matter filed on November 18, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

---

\*      BIGELOW, P. J.         FLIER, J.         GRIMES, J.