Filed 9/12/16  P. v. Sanders CA2/7

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHARLTON E. SANDERS,<br><br>    Defendant and Appellant. | B263073<br><br>(Los Angeles County<br>Super. Ct. No. BA411230) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Clifford L. Klein, Craig E. Veals, and James Dabney, Judges.  Affirmed.

Paul J. Katz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

When counsel for a defendant informs the court of a belief that the defendant may be mentally incompetent, the court must suspend the criminal prosecution until the court determines whether the defendant is competent to stand trial. If the court, after ordering an examination of the defendant and holding a competency hearing, concludes the defendant is competent to stand trial, the court makes that finding and resumes the criminal prosecution. The issue in this appeal is whether the trial court made a sufficient finding that the defendant was competent to stand trial before the court resumed the prosecution. Because we conclude that the court made a sufficient finding of competence, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

A.    *The Assault*

At approximately 6:45 a.m. on May 12, 2013 Christopher Wong went to a drug store in Los Angeles to shoot a promotional video for the store. After he walked through the store with his producer, he went outside to his car to get his professional camera equipment and a metal tripod. Wong found a shopping cart near the entrance of the store, and put his equipment into the cart so he could take it to the area of the "shoot."

As Wong was on his way to set up his equipment, Charlton Sanders approached him from behind and took the tripod out of the cart. As Wong turned toward Sanders, Sanders hit Wong with the tripod three times in his head and face. Wong fell, but was able to get away from Sanders when an employee from inside the store intervened and pulled Sanders away from Wong. The police responded, and Wong identified Sanders as

---

[1]    Because Sanders's appeal is limited to the issue of his competency to stand trial, we summarize the facts only briefly and in a light most favorable to the judgment. (See *People v. Lessie* (2010) 47 Cal.4th 1152, 1157; *People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272, fn. 2; *Superior Gunite v. Ralph Mitzel Inc.* (2004) 117 Cal.App.4th 301, 304, fn. 1.)

2

his assailant. Wong was treated at the hospital for his injuries, which included an inch-and-a-half wound on the top of his head that required eight staples.

B.    *The Charges*

The People charged Sanders with battery with serious bodily injury (Pen. Code, § 243, subd. (d))[2] and assault with a deadly weapon or instrument other than a firearm (§ 245, subd. (a)(1)). The People alleged, as to the battery count, that Sanders used a deadly and dangerous weapon (the camera tripod) in the commission of a felony, within the meaning of sections 12022, subdivision (b)(1), and 1192.7, subdivision (c)(23), and, as to both counts, that Sanders personally inflicted great bodily injury on a person other than an accomplice in the commission of a felony, within the meaning of section 12022.7, subdivision (a). The People also alleged that Sanders suffered a prior serious or violent felony conviction in Florida, as defined by sections 667, subdivisions (a) and (d), and 1170.12, subdivision (b), and that Sanders served a prior prison term for a felony within the meaning of section 667.5, subdivision (b).

C.    *The Verdict and Sentence*

Before trial, counsel for Sanders declared a doubt regarding Sanders's competency to stand trial, and the trial court suspended the prosecution to determine Sanders's competency. The court subsequently reinstated the proceedings, and the jury convicted Sanders on both counts and found true all of the allegations. The court, however, determined that the Florida conviction was not for a serious or violent felony. The trial court sentenced Sanders to an aggregate prison term of eight years.

---

[2]    Statutory references are to the Penal Code.

3

Sanders argues that, after the trial court suspended the criminal prosecution to evaluate whether he was competent to stand trial, the court "did not state on the record that Sanders was mentally competent before restarting criminal proceedings against him." According to Sanders, the trial court "lost jurisdiction when it restarted criminal proceedings without first stating on the record that Sanders was competent to stand trial." The record does not support Sanders's argument.

### A. *Applicable Law*

"'The United States Supreme Court has "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'"'" (*People v. Mendoza* (2016) 62 Cal.4th 856, 871.) ""'"Both federal due process and state law require a trial judge to suspend trial proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial. . . . Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations."'" (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 464; accord, *People v. Rogers* (2006) 39 Cal.4th 826, 847.)

"The applicable state statutes essentially parallel the state and federal constitutional directives." (*People v. Lightsey* (2012) 54 Cal.4th 668, 691.) As relevant here, section 1367, subdivision (a), provides that "[a] person cannot be tried or adjudged to punishment . . . while that person is mentally incompetent." Section 1368, subdivision (b), provides, "If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369. If counsel informs the court that he or she believes the defendant is mentally

4

competent, the court may nevertheless order a hearing."[3]  The "trial court is obligated to conduct a full competency hearing if substantial evidence raises a reasonable doubt that a criminal defendant may be incompetent.  This is true even if the evidence creating that doubt is presented by the defense or if the sum of the evidence is in conflict.  The failure to conduct a hearing despite the presence of such substantial evidence is reversible error." (*People v. Lightsey*, at p. 691; see *People v. Hale* (1988) 44 Cal.3d 531, 541.)  The criminal prosecution is "suspended until the question of the present mental competence of the defendant has been determined." (§ 1368, subd. (c).)  "[U]pon a finding of a defendant's incompetence to stand trial, criminal proceedings shall be suspended, and the defendant committed for treatment designed to restore his or her competency." (*People v. G.H.* (2014) 230 Cal.App.4th 1548, 1560.)

If the court determines that the defendant is competent to stand trial, the court must "make clear on the record that it was making that determination." (*People v. Marks* (1988) 45 Cal.3d 1335, 1342.)  Although "no 'magic words' are required of the trial court," at a minimum the trial court must "*expressly and unmistakably state on the*

---

[3]  Section 1369 provides, "[A] trial by court or jury of the question of mental competence shall proceed in the following order:  [¶]  (a)  The court shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant. . . .  [¶] . . . [¶]  (b)(1)  The counsel for the defendant shall offer evidence in support of the allegation of mental incompetence.  [¶] (2)  If the defense declines to offer any evidence in support of the allegation of mental incompetence, the prosecution may do so.  [¶]  (c)  The prosecution shall present its case regarding the issue of the defendant's present mental competence.  [¶]  (d)  Each party may offer rebutting testimony, unless the court, for good reason in furtherance of justice, also permits other evidence in support of the original contention.  [¶]  (e)  When the evidence is concluded, unless the case is submitted without final argument, the prosecution shall make its final argument and the defense shall conclude with its final argument to the court or jury.  [¶]  (f) In a jury trial, the court shall charge the jury, instructing them on all matters of law necessary for the rendering of a verdict.  It shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent.  The verdict of the jury shall be unanimous."

*record*, either orally or in writing, its determination as to whether the defendant is mentally competent to stand trial." (*Id.* at p. 1343.)

B. *The Trial Court Expressly and Unmistakably Stated on the Record That Sanders Was Competent To Stand Trial*

On January 30, 2014, one of the days trial was set to begin, standby counsel substituted in to represent Sanders, who had been representing himself. After conferring with Sanders during a break, counsel stated to the court, "Based on the conversations that I have had with Mr. Sanders, I do have a doubt as to his competency to stand trial and I am concerned that his mental state is not where it needs to be in order for him to receive a fair trial and to cooperate and assist in the presentation of a defense. I am basing that on the statements that are included in the police reports and also my conversations with Mr. Sanders and things I viewed when I was standby counsel and watching him in court. I think that Mr. Sanders needs to get his head straight before he can understand the proceedings that are going on and so he can properly prepare a defense." Counsel confirmed that Sanders had a history of mental instability, and added, "There is a diagnosed history for Mr. Sanders for which he is currently receiving medication throughout county jail. I don't know that that is the correct medication. I am not a doctor, but it does not seem to be having the effect it should." When the court stated, "So we will need to order a report then," counsel responded, "Yes, your Honor." The court suspended the prosecution, appointed a doctor to examine Sanders and prepare a report, and set a hearing on Sanders's competency for March 3, 2014.

At the March 3, 2014 hearing the following exchange occurred:

"The Court: [The] Court has received a psychiatric report opining that Mr. Sanders is competent to stand trial.

"[Counsel for Sanders]: Yes, your Honor.

"The Court: I had the report a moment ago. . . . I did start reading it. We just got it over the fax, although you have had it for a while.

"[Counsel for Sanders]: Since this morning.

6

"The Court: So we will proceed with rearraignment.

"[Counsel for Sanders]: Yes. The report did make a finding of competency for Mr. Sanders.

"The Court: Yes, so criminal proceedings are reinstated."

The court set a pretrial conference for March 20, 2014.

The record reflects, as Sanders contends, that at the March 3, 2014 hearing the trial court did not "expressly and unmistakably state on the record" that Sanders was mentally competent to stand trial. The trial court noted that the doctor's report found that Sanders was competent, but the court did not state it found Sanders was competent. The court's "yes" referred to the fact that the report made a finding of competence, not to a finding by the court that Sanders was competent. (See *People v. Marks*, *supra*, 45 Cal.3d at pp. 1339, 1341 [trial court's statement "All right" was not a "statement by the court that it had formed any opinion as to whether defendant was competent"].) And, as Sanders correctly argues, the fact that the minute order for the March 3, 2014 hearing states, "The defendant is found competent to stand trial," does not cure the absence of a finding by the court as reflected in the reporter's transcript. (See *Adoption of I.M.* (2014) 232 Cal.App.4th 40, 47, fn. 2 ["[w]hen the minute order and the reporter's transcript differ, the reporter's transcript generally prevails as the official record of the proceedings"]; *In re P.A.* (2012) 211 Cal.App.4th 23, 30, fn. 4 ["'[c]onflicts between the reporter's and clerk's transcripts are generally presumed to be clerical in nature and are resolved in favor of the reporter's transcript unless the particular circumstances dictate otherwise'"]; *People v. Gonzalez* (2012) 210 Cal.App.4th 724, 744 ["[c]onflicts between oral pronouncement of judgment and the minute order are presumed clerical, and generally are resolved in favor of the oral pronouncement"]; *In re Jacob M.* (1989) 210 Cal.App.3d 1178, 1182 ["'[a] minute order is insufficient where . . . the reporter's transcript shows the minute order does not accurately reflect the findings of the court'"].) The People concede the point.

Nevertheless, there were hearings after March 3, 2014. At the next hearing on March 20, 2014 counsel for Sanders stated he had the same concerns about Sanders's competency that he had previously, and suggested that the court order another report from a second doctor. The court commented that the report prepared by the first doctor was not well written. Counsel for Sanders stated, "There are certain inconsistencies with the report and the manifestation of certain behaviors on the part of Mr. Sanders that I think interferes both with his understanding and his participation in the proceedings." Counsel stated that he was again declaring a doubt as to Sanders's competency, and was asking the court to order a second evaluation by a different doctor.

Sanders interrupted and told the court, "I am going to take back over and go pro per again. I am not incompetent. It would be a waste of the taxpayers' money to send me to these competency hearings. This doesn't take a competency hearing, and the facts of the case aren't going to change." Referring to his attorney, Sanders stated, "[H]e isn't representing me anymore. I don't understand. He can declare a doubt for someone who has represented himself and has represented himself for seven months?" The court stated, "I want to make sure that you are competent from a legal standpoint."

At a June 24, 2014 hearing the court indicated it had received the psychological report from the second doctor, which the court stated was well written and which found Sanders competent to stand trial. Counsel for Sanders and the prosecutor stated they were submitting on the second report. The court stated that, "on the basis of [the] reports, the court concludes that the defendant is in fact competent to stand trial, which is consistent with my court-based observations," and the court resumed the criminal prosecution. The court subsequently granted Sanders's request to represent himself again.

Thus, the trial court expressly and unmistakably stated on the record that Sanders was mentally competent to stand trial, although the trial court made the finding on June 24, 2014, not March 3, 2014, and after the court had reviewed two psychological reports, not one. The trial court also stated the basis for its finding: the two doctors' reports and the court's observations of Sanders in court, neither of which Sanders challenges as

8

insufficient.  Nor does Sanders identify anything of significance that occurred between March 3, 2014 and June 24, 2014, other than the court ordered another psychiatric evaluation.  The trial court on June 24, 2014 essentially cured any error in failing to make an express and unequivocal finding of competency on March 3, 2014.

Sanders argues, without citing any authority, that the competency hearing on June 24, 2014 "was invalid because the trial court ordered it when it lacked jurisdiction to do so – during criminal proceedings subsequent to the inadequate first competency hearing." Sanders asserts that the trial court's "crucial omission" on March 3, 2014 of failing to state expressly and unequivocally that Sanders was competent voided "[a]ll subsequent criminal proceedings – including the order for a second competency hearing," and operated as a "blanket invalidation of subsequent criminal proceedings," including the March 20, 2014 order for another report and competency hearing.

Not according to the California Supreme Court.  "[T]he failure to comply with the mandate of section 1368 does not effect a fundamental loss of jurisdiction, i.e., 'an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.  [Citations.]'  Rather, the trial court suffers an inability 'to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.'  [Citations.]  Thus, while the court retains jurisdiction over the cause, it acts in excess of that authority in failing to hold a competency hearing."  (*People v. Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 66, fn. omitted; see *People v. Cadogan* (2009) 173 Cal.App.4th 1502, 1511 ["section 1368, subdivision (c), does not literally suspend all proceedings pending a competency hearing"].)  Although the trial court may not have had authority between March 3, 2014 and June 24, 2014 to swear in a panel of jurors, preside over a trial, or conduct a sentencing hearing, the court still had jurisdiction to order another report, hold a second competency hearing, and then make an express and unequivocal finding of competency. (See *People v. Pennington* (1967) 66 Cal.2d 508, 521 ["[u]nder section 1368 of the Penal Code the trial court has no power to proceed with the trial once a doubt arises as to the sanity of the defendant"]; *People v. Cadogan*, *supra*, 173 Cal.App.4th at pp. 1510-1511

9

[although preliminary hearing, trial, and sentencing are proceedings "'in the criminal prosecution' that must be suspended until 'the question of [competency] has been determined,'" the court can still hear and rule on a motion for substitution of counsel]; *People v. Tomas* (1977) 74 Cal.App.3d 75, 87-88 ["the trial court lacks power to try, judge or sentence defendant unless he is then presently sane"].)  Therefore, the trial court did not lack jurisdiction on March 20, 2014 when it ordered another report on Sanders's competency and scheduled another competency hearing.

Moreover, an appellate court, upon finding the trial court has erred by failing to hold a competency hearing and make a finding of competence, may order a limited remand for a "retroactive competency hearing," whenever such a hearing is feasible. (*People v. Lightsey*, *supra*, 54 Cal.4th at pp. 702-710; see *People v. Ary* (2004) 118 Cal.App.4th 1016, 1028; see also *People v. Ary* (2011) 51 Cal.4th 510, 520.)  Here, a "retroactive" competency hearing to correct the court's error in failing to make an express finding was not only feasible, it actually occurred soon after the first competency hearing, and with the benefit of additional contemporaneous information and testimony about Sanders's competency.  (See *People v. Lightsey*, at p. 710 ["[i]n assessing whether a retrospective competency hearing is feasible, the trial court should consider "'"'(1) [t]he passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with [the] defendant before and during trial''''''"].)  Thus, the trial court has already provided Sanders with the appropriate remedy for its initial failure to make an express and unequivocal finding of competency to stand trial, and there is no need for a remand.

10

**DISPOSITION**

The judgment is affirmed.

SEGAL, J.

We concur:

ZELON, Acting P. J.

GARNETT, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.